JAMES E. SCOTT v. STATE OF ARKANSAS

5531                              463 S. W. 2d 404

Opinion delivered February 8, 1971

[Rehearing denied March 15, 1971.]

*E. V. Trimble,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant was convicted of first degree rape and his punishment was fixed at death. In his brief appellant contends that the court should have ordered a change of venue, and that members of the Negro race were intentionally excluded in the selection of jurors. Pursuant to our Rule 11 (g) the attorney general has briefed all points raised in the motion for new trial and all objections made during the course of the trial.

Appellant, for the first time on appeal, argues that venue should have been changed because of a race riot then taking place in the county seat. The record is silent as to any race riot or any other type of public disturbance. Nor was there any motion for change of venue. Our constitution authorizes a change of venue "upon application of the accused, in such manner as now is, or may be, prescribed by law." Art. 2, § 10. Our law provides that the defendant may apply for such order of removal by petition setting forth the facts, supported by at least two affidavits of qualified electors not related to the defendant. Ark. Stat. Ann. § 43-1502. Appellant did not attempt to follow the recited statute.

The other point argued in the brief is that "members of the Negro race were deliberately and intentionally limited and excluded" from the jury panel. The transcript is void of any reference to the discrimination now raised on appeal. We would have to speculate on the racial composition of the panel.

The sufficiency of the evidence is not argued on appeal but was raised in the motion for new trial. Terry Wilhite, a fifteen year old white girl testified that on the night of August 23, 1969, she was parked with her boy friend in a "parking place" at the edge of Forrest City; that four Negro boys came to the car and at knife point forced her to alight; and that she was taken to a nearby secluded spot by three of the boys. She said that one of the boys raped her while one held her legs and another stooped down by her head with a knife. After that incident she said she was taken a short distance down the road and raped by the boy who held

the knife. She could not identify any of the four boys. One of the boys, McKinley Green, testified for the State. He said that he accompanied appellant and two other boys to the parking place on the night in question. He testified that he spent the entire time with Terry's boy friend. He said he did not see appellant have intercourse with the girl but that appellant did go to the woods where the girl was taken by two of the boys.

Robert Radde is a special agent for the federal bureau of investigation and is stationed at South Bend, Indiana. Two weeks after the incident Radde took appellant in custody at South Bend under a fugitive warrant. He testified that he explained to appellant all the latter's constitutional rights and explained that he was wanted on a rape charge in Forrest City. Appellant offered to relate the occurrence in Forrest City but said he did not want to sign anything. After a hearing in chambers the witness related to the jury that appellant told him that he (appellant), accompanied by three other Negroes, went to a wooded area outside of Forrest City some two weeks prior to his detention in South Bend and there the appellant had sexual relations with a girl who said she was fifteen years of age. Dr. Neal Laney said he examined the prosecuting witness at the hospital around midnight that night. He said he found male motile sperm, and that her sexual organs were bleeding, raw and irritated. Appellant testified in his own behalf and denied making any incriminating statement to the special agent. He admitted being with the other three boys on the night of August 23 but insisted that he got out of the car and caught a bus for South Bend. He asserted that he was never out on "lover's lane" that night. The evidence introduced by the State easily meets the test of the substantial evidence rule.

Upon completion of voir dire examination of the jury appellant's counsel moved the court to excuse Juror Williams for cause. The voir dire was not recorded but the attorney from memory recited that the victim's companion and the juror were members of the same church and that Williams expressed a high regard for Clemmons, the girl's companion. The court replied that

Juror Williams also asserted that he would not, "on the basis of friendship alone, put any more credit in his testimony than he would that of other witnesses in the case. The court is of the opinion, based upon the testimony of this juror, on voir dire, that he is a qualified juror." We are unable to say that the court abused its discretion. Additionally, we cannot discern from the record whether appellant exercised all his challenges.

Shortly after the incident the officers, upon information, stopped a car with appellant's three companions in it. The officers removed from the car a rifle, a knife, and a box opener. When testimony was offered describing the three items, appellant objected because (1) he was not in the car at that time, and (2) the officers did not have a search warrant. The officers had a description of the boys as well as the automobile. The officers were informed by headquarters that a rape was committed by boys of that description and that they occupied the described vehicle. A somewhat similar state of facts is to be found in *Johnson* v. *State,* 249 Ark. 208, 458 S. W. 2d 409, and we upheld the search as incidental to a lawful arrest:

> In the case at bar the arresting officer was informed of the correct license number of the get away car and had an accurate description of it as well as of the armed appellant and his trunk mate. We are without hesitation in finding that these facts and circumstances were more than sufficient to establish probable cause for arrest and that, therefore, the search and seizure incidental thereto were lawful.

Furthermore, a knife had been used in the perpetration of the heinous crime and it was not unreasonable to suspect that the weapon had been stashed in the car. The knife which was recovered was in fact identified as the same weapon held over the prosecuting witness. Finally, the arrest was made around midnight and a search warrant could not have been obtained without some difficulty and delay. We therefore conclude that the search was a reasonable one. "Only those searches and seizures which are unreasonable are prohibited by

972

the Fourth Amendment to the United States Constitution and Art. 2, § 15, Arkansas Constitution." *Mann* v. *City of Heber Springs,* 239 Ark. 969, 395 S. W. 2d 557 (1965). Also, see *Chambers* v. *Maroney,* 399 U. S. 42, 26 L. ed. 2d 419, 90 S. Ct. 1975. Appellant also objected to the introduction of the knife because he was not present when the search was made. We attach no significance to his absence.

Appellant asked, in an in-chambers hearing, that the FBI agent not be allowed to repeat any statement made to the agent by the appellant in South Bend. Appellant did not contend that any statements made to the FBI were involuntary; he objected on the ground that it would constitute hearsay evidence in view of the fact that appellant declined to sign a statement. Voluntary statements made by an accused after a crime are properly admitted in evidence as an admission. *Martin* v. *State,* 236 Ark. 409, 366 S. W. 2d 281 (1963).

Affirmed.