Tony PEREZ *v.* STATE of Arkansas

CR 76-52                                                541 S.W. 2d 915

Opinion delivered October 4, 1976
[Rehearing denied November 8, 1976.]

*Laster & Lane,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was found guilty of possession of a controlled substance (marijuana) with intent to deliver. For reversal he challenges the validity of a search of an automobile which was being driven by him. About 100 kilograms of marijuana were found in its trunk. The trial judge, holding that the search was valid as a "consent search," denied motions to suppress this evidence and to quash the information, both of which were based upon the asserted invalidity of the search. We affirm without reaching the question of the validity of the consent, because we find that the search without a warrant and not incident to arrest was not unreasonable under the circumstances.

At approximately 7:55 p.m. on April 28, 1975, appellant was driving east on Interstate Highway 40 near Lonoke, when he was stopped by Arkansas State Police Trooper Imboden, who was observing traffic along the highway. Imboden testified substantially as follows:

I was sitting approximately two miles west of Lonoke, eastbound, when I noticed a Ford Fairlane, occupied by two persons who appeared to be very young, pass at an extremely slow rate of speed. The occupants were sitting very low in the seat and appeared to be in the 14 year age group. The vehicle was travelling at 37 miles per hour as shown by my "radar" but slowed to at least 30 miles per hour when it passed me. The flow of traffic, which was moderate, was proceeding at 55 to 60 miles per hour, at the least. It seemed to me that the vehicle, which bore California license plates, was blocking traffic and creating a hazard. The car was "sitting down in the back and reared up in the front." It is a part of my duties to see that traffic is flowing smoothly. I pulled out and "pulled them over." I stopped the car for several reasons. The first was because of speed. I stop every car driving at 37 miles per hour in moderate or heavier traffic. I stop vehicles driven by persons sitting low in the seat because I suspect they might be too young to drive. I stop vehicles driving at 37 miles per hour because I suspect drunkenness. I wanted to find out why a person driving all the way from California was going so slow. When I started after them, I suspected it was a stolen car. I got out of the vehicle and directed the driver to come to me at the back of his car. I asked for his driver's license. It was a Texas license. He appeared to be intoxicated, and I suspected alcohol, but I couldn't smell anything. He wasn't coherent and just didn't act right to me. I asked for proof of ownership of the automobile and he produced a registration in someone else's name. Perez, the driver, said the car belonged to a relative or friend. I went to the right front of the car to talk to the passenger, who turned out to be a girl. I asked her who she was and where she was going. She would not respond or look at me at first, but finally after I asked several times, she said that she was going to Tennessee or somewhere, she did not know for sure, and said she was just riding with Perez. When I was at the right front of the car, I noticed a spare tire, a suitcase or two, and some clothes in the back seat. I had been informed through intelligence meetings of the Arkansas State Police that Mexican-Americans that had equipment of this nature in the back seat were possibly carrying illegal contraband or mari-

juana. I was told through written information and also through contact with CID officers to be on the lookout for Mexican-Americans in a variety of cars from Texas and California carrying spare tires and clothes in the front, with the car sitting down. Except for the information from the State Police, all I had was a hunch or belief about this particular individual. I asked Mr. Perez what he had in the trunk, because it looked suspicious and I wanted to see what his reaction would be. He said he had some clothes. I asked if he minded if I saw what was in the trunk and he did not say anything. I said, "You don't have to, but I would like to see what is in the trunk." Without any further response he went and put the keys in the trunk and opened it. It was difficult for Perez to understand what I was saying but I felt that this was due to his intoxication and not to a language problem.

Perez denied that he was intoxicated. He testified he had smoked a marijuana cigarette about three hours earlier and had taken "speed" about eight hours earlier. He stated that he opened the trunk of his vehicle because of the officer's menacing appearance, demeanor and gestures. He denied that Imboden told him he had a right not to open the trunk. He said that the trooper told him that he had been stopped because the car had "highjacker" shock absorbers. Perez stated that he was driving at a speed of 48 to 50 miles per hour. The testimony of the passenger tended to corroborate that of Perez as to the officer's actions and statements and as to the speed of the vehicle.

It is the duty of the State Police to patrol the highways and to enforce the laws of the state relating to motor vehicles and the use of the highways. Ark. Stat. Ann. § 42-407 (Repl. 1964). Therefore, the original intrusion upon Perez' freedom of movement was justified as a proper investigatory stop, either to determine the reason for the subject vehicle's slow speed, which violated Ark. Stat. Ann. § 75-604 (Supp. 1975) or to determine if the driver was of legal age to operate a vehicle. Ark. Stat. Ann. § 75-309 (Supp. 1975). See *Adams* v. *Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). In either event, it was proper for the officer to demand that Perez exhibit his driver's license. Ark. Stat. Ann. § 75-323 (Repl. 1957).

When Officer Imboden actually confronted him the defendant manifested symptoms of intoxication and displayed a driver's license from one state and a registration certificate from another, issued to an entirely different person. In addition, the clues to which Imboden had been alerted by the CID and the State Police were manifested in "plain view." Assuming the officer had no more than a suspicion before he stopped Perez, either Perez' apparent intoxication coupled with evidence that the vehicle may have been stolen or the "plain view" evidence that the vehicle contained contraband justified a thorough search.

It is well established that warrantless searches of automobiles that are constantly movable may be reasonable when, under the same circumstances, a search of a home, store or other fixed piece of property would not be. *Cooper* v. *California*, 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967); *Brinegar* v. *U.S.*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). An important consideration in contrasting automobile searches with other types is that the extent of police-citizen contact involving automobiles will, of necessity, be substantially greater than such contacts in a home or office; therefore the citizen's expectation of privacy in his auto is not the same as in his home. Also, "community caretaking functions" will more likely bring police officers in plain view of evidence of crimes or contraband in a car than in a home or office. *Cady* v. *Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

Whenever a police officer has reasonable cause to believe that contraband is being unlawfully transported in a vehicle then the vehicle may be the object of a warrantless search. *Gordon* v. *State*, 259 Ark. 134, 529 S.W. 2d 330; *Carroll* v. *U.S.*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 ALR 790 (1925). Determination of the soundness of his concluding that probable cause for the search existed is made in the light of the particular situation, with account taken of all the circumstances. *Gordon* v. *State*, supra; *Brinegar* v. *U.S.*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). See also, *Adams* v. *Williams*, supra; *Sibron* v. *New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). Even though a stop for a traffic violation may not justify a vehicle search, circumstances surrounding the stopping together with facts becoming apparent

to the officer after the stop has been made may afford probable cause to believe that the vehicle contains contraband. *Gordon* v. *State,* supra. In such cases, given exigent circumstances, the right to search and the validity of the consequent seizure depend on the reasonableness of the cause the seizing officer has for believing that the contents of the automobile offend against the law. *Cox* v. *State,* 254 Ark. 1, 491 S.W. 2d 802, cert. den. 414 U.S. 923, 94 S. Ct. 230, 38 L. Ed. 2d 157; *Moore* v. *State,* 244 Ark. 1197, 429 S.W. 2d 122, cert. den. 393 U.S. 1063, 89 S. Ct. 714, 21 L. Ed. 2d 705.

Given probable cause, the search here was valid if it was not reasonably practical to obtain a search warrant. *Tygart* v. *State,* 248 Ark. 125, 451 S.W. 2d 225, cert. den. 400 U.S. 807, 91 S. Ct. 50, 27 L. Ed. 2d 36. See also, *Scott* v. *State,* 249 Ark. 967, 463 S.W. 2d 404; *Maltos-Roque* v. *U.S.,* 381 F. 2d 130 (5 Cir., 1967). Cf. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

As pointed out in *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), the circumstances furnishing probable cause to search a particular automobile for particular articles are most often unforeseeable, so that, if an effective search is to be made, it must often be made immediately and without a warrant or the car must be seized and held without a warrant for whatever period is necessary to obtain a warrant. Accordingly, the court held in *Chambers* that, for constitutional purposes, given probable cause to search, either course is reasonable under the Fourth Amendment. Since Imboden was alone and the parties were obviously nonresidents of the state, it would have been foolish for him to have left the vehicle in quest of a search warrant at that hour of the night. The impracticality of obtaining a search warrant in this case is obvious. The chances of successfully executing a search warrant after the passage of time required to obtain one were speculative to say the least. Cf. *Husty* v. *U.S.,* 282 U.S. 694, 51 S. Ct. 240, 75 L. Ed. 629 (1931). It is recognized that normal police procedures in a metropolitan area may be neither normal nor possible on a rural-area roadside. *Cady* v. *Dombrowski,* supra.

The critical inquiry then is whether there was probable cause for Officer Imboden to believe that the contents of the

automobile offended against the law, i.e., were contraband. The question of reasonableness or unreasonableness is one of realistic and not theoretical approach. *Schwimmer* v. *U.S.,* 232 F. 2d 855 (8 Cir., 1956), cert. den. 352 U.S. 833, 77 S. Ct. 48, 1 L. Ed. 2d 52. The rule of probable cause is a practical, non-technical conception. *Brinegar* v. *U.S.,* supra; *Adams* v. *Williams,* supra. Probable cause is to be evaluated from the viewpoint of a prudent and cautious police officer at the time he acts, and not from the vantage point of a library. The question is a pragmatic one to be decided in the light of a particular case and the answers are not to be found by the application of a mathematical formula. Constitutional standards permit common sense and honest judgments by police officers in their probable cause determinations. *Sanders* v. *State,* 259 Ark. 329, 532 S.W. 2d 752. See also, *Brinegar* v. *U.S.,* supra. Judicial review should take into account the fact that a police officer has to act upon the spur of the moment and that he is not a constitutional lawyer, nor is he afforded the luxury of hindsight usually possessed by reviewers of his action. *State* v. *Contursi,* 44 N.J. 422, 209 A. 2d 829 (1965); *State* v. *Johnson,* 230 A. 2d 831 (R.I., 1967). In appraising the evidence, regard must be given to the nature of the believed crime, and the recognized methods or devices of its commission and the common and specialized experience and work-a-day knowledge of policemen taken into account. *State* v. *Contursi,* supra; *State* v. *Miller,* 47 N.J. 273, 220 A. 2d 409 (1966). The question is whether the facts available to the officer at the moment of the search would warrant a man of reasonable caution to believe that the action taken was appropriate, *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *People* v. *Tassone,* 41 Ill. 2d 7, 241 N.E. 2d 419 (1968), cert. den. 394 U.S. 965, 89 S. Ct. 1318, 22 L. Ed. 2d 567; or whether the search is one which fair-minded persons, knowing the facts, and giving due consideration to the rights and interests of the public, as well as to those of the suspect, would judge to be an unreasonable or oppressive intrusion. *State* v. *Criscola,* 21 Utah 2d 272, 444 P. 2d 517 (1968).

As we see it, the same standards govern probable cause whether the question is validity of a search and seizure or validity of an arrest. In the context of warrantless arrest, we have said that probable cause is a reasonable ground for suspicion supported by circumstances sufficiently strong in

themselves to warrant a cautious man to believe the accused had committed a crime. *Johnson* v. *State,* 249 Ark. 208, 458 S.W. 2d 409; *Sanders* v. *State,* supra. We have also said that probable cause exists when the facts and circumstances within the officer's knowledge and of which he has trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense is being committed. *Jackson* v. *State,* 241 Ark. 850, 410 S.W. 2d 766. See also, *Adams* v. *Williams,* supra.

A reasonable suspicion of an officer that the driver of a motor vehicle is intoxicated has been held sufficient justification, not only for stopping the vehicle, but for searching for intoxicants or drugs when driving a motor vehicle while under the influence of intoxicants or drugs is a violation of such statutes as Ark. Stat. Ann. §§ 75-1027 (Repl. 1957), 75-1029 (Supp. 1975) and 75-1026.1 et seq (Supp. 1975). *State* v. *Gustafson,* 258 S. 2d 1 (Fla., 1972). We have held that a person's conduct while under the observation of a police officer is a proper factor to be considered in evaluating probable cause. *Jones* v. *State,* 246 Ark. 1057, 441 S.W. 2d 458. See also, *Terry* v. *Ohio,* supra; *Peters* v. *New York,* sub. nom. *Sibron* v. *New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). The fact that the rear of the automobile appeared to be low was a significant fact when considered with other information tending to cause the officer to believe that there was contraband in the automobile. See *Burke* v. *State,* 235 Ark. 882, 362 S.W. 2d 695, cert. den. 373 U.S. 922, 83 S. Ct. 1523, 10 L. Ed. 2d 421. See also, *People* v. *Bringardner,* 233 Mich. 449, 206 N.W. 988 (1926); *Nichols* v. *U.S.,* 176 F. 2d 431 (8 Cir., 1949).

In considering the evidence available to Officer Imboden, it was proper for the officer to take into consideration conditions identifiable as the basis for a suspicion that the contents of the vehicle offended against the law in the collective experience of law enforcement officers who have dealt with detection of illegal transportation of a controlled substance. Cf. *Terry* v. *Ohio,* supra. The mere fact that Imboden's information about this experience was hearsay is not destructive of probable cause based in part thereon. See *Jackson* v. *State,* supra; *Jones* v. *State,* supra. Probable cause is evaluated by the courts from collective information of police and not merely on the personal knowledge of the officer making the decision.

*Johnson* v. *State,* supra; *Jones* v. *State,* supra. When the conduct of Perez and the absence of an odor of alcohol were considered in the light of the other information possessed by the officer, what otherwise was only a reasonable suspicion was supported by circumstances sufficiently strong to warrant a reasonably cautious, discreet and prudent police officer in the exercise of common sense to arrive at the honest judgment that the vehicle contained contraband. Nothing more is required. *Husty* v. *U.S.,* supra; *Sanders* v. *State,* supra.

The officer would have been derelict in his duty had he not searched the automobile. Cf. *Russell* v. *State,* 240 Ark. 97, 398 S.W. 2d 213; *Terry* v. *Ohio,* supra. It has been said, in a case involving the search under the rear seat cushion of an automobile for intoxicating liquors, that the search was the duty of the searching officer, who had approached an empty vehicle parked in a dark alley and, upon throwing the beam of his flashlight into the vehicle, had discovered several empty tin cans of one gallon capacity and a back seat cushion so disarranged as to make it appear that something was concealed under it. *Smith* v. *State,* 155 Tenn. 40, 290 S.W. 4 (1927). The Tennessee court aptly pointed out that the policeman is a watchman to seek for probable offenders and offenses against the law, and that the security of citizens is dependent upon the faithful performance of his duties. While that case involved duties of an officer in a metropolitan area, it is recognized that in non-metropolitan areas enforcement of traffic laws and supervision of vehicular traffic may be a large part of the officer's duties. *Cady* v. *Dombrowski,* supra.

The exigencies of the situation made a search of the automobile proper, with or without the consent of the person who was in control of the vehicle. See *Husty* v. *U.S.,* supra. Nor was the scope improper. See *People* v. *Jackson,* 241 Cal. App. 2d 189, 50 Cal. Rptr. 437 (1966); *People* v. *Superior Ct.,* 44 Cal. App. 3rd 207, 118 Cal. Rptr. 586 (1974). Even if appellant consented to the search, he merely consented to what might have been done without his permission. Cf. *Patrick* v. *State,* 245 Ark. 923, 436 S.W. 2d 275.

Since we find the warrantless search to be reasonable, the judgment is affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and JONES, JJ.