**Walter SMITHWICK, Jr., et al., Plaintiffs-Appellants-Appellees,**

v.

**Sam N. YOUNG, Intervening Plaintiff-Appellant-Appellee,**

v.

**Loy Dean SMITHWICK, Defendant.**

No. 80-290-II.

Court of Appeals of Tennessee, Middle Section.

Sept. 9, 1981.

Permission to Appeal Denied by Supreme Court Nov. 9, 1981.

---

Glenn Bishop and E. R. Woolard, Lebanon, Solon Fitzpatrick, Carthage, for plaintiffs-appellants-appellees.

W. H. Lassiter, Jr. and Laurence M. Papel, Taylor, Schlater, Lassiter, Tidwell & Trentham, Nashville, for intervening plaintiff-appellant, appellee.

## OPINION

CONNER, Judge.

(Filed with concurrence of participating judges)

This is a dispute over a real estate commission. The chancellor in a bench trial awarded some, but not all of the claimed amount. The sellers of the property and the agent were dissatisfied with the ruling and both have appealed.

The caption in this cause is confusing as the owners of the property were initially involved in partition dispute in which appellant Sam N. Young, intervened as a third-party plaintiff seeking his commission. He will hereafter be referred to by name or as the plaintiff. The people with whom he contracted to sell real estate owned in part by them, Walter Smithwick, Jr., Dr. Walter Smithwick, III, and E. R. Woolard, will hereafter be referred to collectively as the defendants or individually as Smithwick, Jr., Smithwick, III and Woolard, respectively.

Most of the proof adduced at trial is uncontroverted, though procedurally the matter followed an unusual course.

On April 28, 1978, the two Smithwicks and Woolard filed suit in the chancery court to obtain a partition sale of the Village Shopping Center in Lebanon. The initial defendant was Loy Dean Smithwick, the former wife of Smithwick, III, who also had an ownership interest in the property. The shopping center was subsequently sold at a court ordered sale for $253,000.00 and the proceeds of that sale were distributed among the three Smithwicks and Woolard. That portion of the proceeding is not now before us.

On April 6, 1979, plaintiff filed an intervening complaint against Smithwick, Jr., Smithwick, III and Woolard to collect his real estate commission in the amount of $18,250.00 under contract dated December 2, 1975, for the sale of the subject shopping center. The bases of the suit were breach of contract and misrepresentation. The defendants in answer denied that any commission was due on the grounds that plaintiff did not produce a ready, willing and able buyer and that Loy Dean Smithwick, an owner, had refused to join in the sale. Thereafter, the Smithwicks and Woolard filed a cross-claim against the said Loy Dean Smithwick, but this cross-claim was ultimately dismissed and is not the subject of this appeal.

The chancellor found for the plaintiff and against all the defendants on the ground of negligent misrepresentation—not breach of contract—and awarded damages in the amount of $7,500.00. After post-trial motions were overruled, both plaintiff and defendants have appealed the trial court's ruling.

These facts appear from the record and the memorandum opinion of the chancellor. On June 12, 1971, Smithwick, III and his then wife, Loy Dean Smithwick, became owners by warranty deed of a one-third undivided interest in the subject shopping center by virtue of a deed prepared by Woolard, then and now a practicing attorney in Lebanon. Title to the balance of the center was held by Woolard and his wife and Smithwick, Jr. and his wife.

On April 8, 1976, Smithwick, Jr., on behalf of himself, Woolard and Smithwick, III signed a listing contract with plaintiff, a Madison broker, giving him the exclusive right to sell the center at a price of $365,-000.00 at a commission of 6%. The exclusive listing agreement on its face represented ownership in the center to be vested in Smithwick, Jr., Smithwick, III and Woolard.

Some time after the listing contract was executed but before May 17, 1976, according to Smithwick Jr., he and plaintiff had a discussion wherein Smithwick, Jr. explained that he was "sad" because his son, Smithwick, III, and daughter-in-law, who were then Florida residents, were having marital problems. Smithwick, Jr. did not, however, then notify the plaintiff that Loy Dean Smithwick had any ownership interest in the shopping center which plaintiff was attempting to sell. Plaintiff had no recollection of the conversation.

Plaintiff spent considerable time attempting to acquire a purchaser for the property and in making an economic survey to determine the true value of the property based upon then existing leases. An offer to purchase the property by one Leon May for $339,000.00 was secured, but rejected by the Smithwicks and Woolard. Had such offer been accepted by the defendants the real estate commission earned by plaintiff would have been 6% or $20,340.00.

On May 17, 1976, plaintiff secured a written offer from Robert Ziegler, trustee for Jerry Rittenberry, to purchase the subject property for $365,000.00 with a commission to plaintiff of 5% or $18,250.00. The offer was accompanied by an earnest money check for $5,000.00. Thereafter, the offer was accepted by Smithwick, Jr., Smithwick, III and Woolard. Nowhere on this contract did the name of Loy Dean Smithwick appear, and plaintiff testified that even at this late date he was not made aware that she had any ownership interest in the property. In order to facilitate the closing of the sale, one day later, on May 18, 1976, Smithwick, III, the Florida resident, executed a full power of attorney to his father, Smithwick, Jr.

The May 17 contract was contingent upon Rittenberry being able to obtain a loan of $285,000.00. That contract also provided to The Kroger Company a right of first refusal to purchase the center. This right of first refusal had previously been granted Kroger under its lease agreement of April 20, 1962. However, between May 18, 1976, and June 24, 1976, the plaintiff was able to obtain the oral consent of Kroger to give up that right of first refusal.

Thereafter, on July 9, 1976, plaintiff Young secured a written commitment from Fidelity Federal Savings & Loan Association of Nashville of its willingness to pursue making a loan of $255,000.00 as needed by Rittenberry. Shortly thereafter, plaintiff had made arrangements for secondary financing for Rittenberry for the balance of $30,000.00 of financing required.

In follow-up of the requirements of the Fidelity Federal commitment, on August 19, 1976, at his own expense, $1,600.00, plaintiff Young obtained a MAI appraisal from the Douglas C. Smith Company. It showed the value of the center to be $350,-000.00.

In the interim, on August 4, 1976, but unknown to the plaintiff, the divorce case of Smithwick, III and Loy Dean Smithwick was tried in Jacksonville. This fact was known by both defendants Smithwick, at the minimum. The final judgment dissolving that marriage was entered on October 15, 1976, and defendant Smithwick, III and his former wife were each given an undivided interest as tenants in common in their portion (⅙ each) of the shopping center. All of the defendants were aware of the divorce prior to December 2, 1976, but no disclosure thereof was made to the plaintiff. Woolard testified that he knew that decree had been entered on October 15, 1976, and that some time between that date and December 2, 1976, he requested a certified copy of the judgment from Smithwick, III. Thereafter, he made no further efforts to obtain a copy of the judgment or to determine what the court had done concerning the interest in the property of Smithwick,

III, and his former wife. Woolard did testify that as of December 2, 1976, that he was "led to believe" that Loy Dean Smithwick was no longer an owner of the shopping center. He testified that he communicated this fact to the plaintiff.

Between September 1, 1976, and December 2 of that year, the plaintiff commenced to negotiate with several companies concerning a requirement of Rittenberry's intended lender that the shopping center contain a supermarket of at least 12,500 square feet. At one point plaintiff went so far as to personally guarantee the necessary lease as well as a loss of rent provision. On December 2, 1976, further meetings occurred in Woolard's law office, regarding the drafting of a new sales contract between Rittenberry, the two Smithwicks and Woolard. At these meetings Woolard represented himself as an owner and as an attorney for his partners in the shopping center. At the conclusion of those meetings a second sales contract was drafted by Woolard for the sale of the center to Rittenberry for $365,000.00. The face of this second contract again showed the sellers to be Smithwick, Jr., Smithwick, III and Woolard. This was in spite of the entry of the divorce decree of October 15, 1976, wherein Loy Dean Smithwick was clearly given an ownership interest in the premises as a tenant in common with Smithwick, III. That contract likewise provided for a 5% real estate commission or $18,250.00, to be paid to the plaintiff. The contract had two contingencies: (1) that Rittenberry be able to obtain a loan of $262,500.00; and (2) that Rittenberry and plaintiff would immediately lease 15,000 feet upon the cancellation of the existing "Kroger lease, as presently contemplated, and in connection with which negotiations are now pending." This was so there would be no loss of rent to the sellers.

Some time after December 2, 1976, according to the testimony of Woolard, he received from Smithwick, III, a copy of the final divorce decree, but misread the contents thereof. He mistakenly formed the opinion that the decree was silent as to the interest of Loy Dean Smithwick in the shopping center—even though the decree clearly spelled out the interest awarded to her in two separate places. Woolard acknowledged, however, that even though he was confused about the decree, he in no way communicated this confusion to the plaintiff or Rittenberry until much later in 1977.

Subsequent to execution of the December 2, 1976, agreement, both plaintiff and Woolard, in his role as an attorney, and in accordance with the requirements of that agreement, negotiated with Kroger for cancellation of its long-term lease. On April 22, 1977, Woolard was orally advised by officials of Kroger of its agreement to cancel the lease. On April 27, 1977, he wrote to plaintiff that the Kroger cancellation would be effective May 1 and that "your lease will be effective" that date. He further advised plaintiff that Kroger had prepared a cancellation agreement for all the owners to sign. On that date Woolard first advised plaintiff that the cancellation agreement forwarded by Kroger would have to be signed by Loy Dean Smithwick, who by virtue of the October 15, 1976, divorce decree, had an undeniable ownership interest in the center.

Also on April 27, 1977, Woolard forwarded to Smithwick, III the cancellation agreement furnished by Kroger with a request that he and Loy Dean Smithwick sign and return the agreement as soon as possible while Kroger is "in the mood." In that letter Woolard was clear and unequivocal that Kroger had in fact agreed "to release this property, with no strings attached, effective May 1, 1977."

Also, on or about April 27, 1977, Rittenberry gave notice to and received the consent of Smithwick, Jr., Smithwick, III and Woolard, in regard to the assignment of his interest in the December 2, 1976, sales contract to William E. Crook. Crook was the owner of Crooks Food Town, a well-known chain of food stores in the Nashville area. Crook deposited $5,000.00 in earnest money as well as the first month's rent of $1,562.50 on the Kroger space to be leased effective

May 1, 1977. Crook had advised the plaintiff that he would not require a loan contingency for the $262,500.00, he being financially able to close the transaction in cash. He desired to have the secondary financing of $30,000.00 provided by the sellers pursuant to the contract of December 2, 1976, but Crook testified that, if necessary, he would have been willing to close the entire transaction with cash. Crook's financial statement, indicating his ability to handle the transaction, was admitted at trial and showed a net worth in excess of $1,900,-000.00.

On May 1, 1977, the date which Kroger had given Woolard when the lease cancellation agreement was to become effective, that agreement had not been returned from Florida executed by either Smithwick, III or Loy Dean Smithwick. The record discloses absolutely no fault in that matter on the part of plaintiff. During this same time period, unbeknownst to plaintiff, Smithwick, Jr., Smithwick, III and Woolard had been engaged in a partnership dispute with Loy Dean Smithwick which subsequently resulted in the filing of the partition suit. Plaintiff first learned at trial that the cancellation agreement was finally returned from Florida executed by the Smithwicks on May 17, 1977, but after the Kroger deadline. Loy Dean Smithwick's attorney in a subsequent letter to Woolard summed up her frustration with the lack of information provided by the Nashville owners when he wrote:

> Mrs. Smithwick will certainly cooperate in any renewal of leases and proposed sales. However, the other partners must also cooperate with her. Referring back to the proposed sale of the shopping center last summer, *Mrs. Smithwick did not receive a copy of the sales contract until after it had been signed. Moreover, she was not even listed as one of the sellers on the contract. Furthermore, we were not given the necessary information to evaluate the desirability of the sale from her point of view until the last minute, despite repeated requests. Even so, we responded to the request concerning the cancellation agreement with the Kroger Co.* within two weeks of our receipt of the agreement and *within four days of our receipt of some of the other requested information. We feel that Mrs. Smithwick certainly responded expeditiously* and courteously *in this matter, especially in comparison to the respect shown for her rights and the cooperation given to her.* (Emphasis supplied.)

The evidence at trial disclosed that though Kroger orally gave its consent to cancellation of its lease to Woolard on April 25, 1977, it still undertook negotiations for the sublease of the premises. When the cancellation agreement was not returned executed by all parties on May 1, 1977, Kroger shortly thereafter subleased the premises to another. This killed the sale to Crook pursuant to the terms of the December 2, 1976, sales agreement as to which he had received an assignment from Rittenberry.

The plaintiff continued to seek another buyer for the shopping center and obtained at least one other offer which was rejected by the owner. On June 12, 1978, the plaintiff demanded payment of his real estate commission in the amount of $18,250.00. Defendants refused and this litigation ensued.

On these facts the chancellor held that plaintiff was entitled to recover from defendants $7,500.00 on the basis of negligent misrepresentation. Young contests the sufficiency of this award on three grounds. However, in view of our disposition of the matter it is necessary to consider only the first assignment as to the "possible negligence" of Young in the matter.

The defendant likewise appealed the ruling of the chancellor raising as error six grounds, which can basically be reduced in discussion to two: (1) Does the proof disclose that the plaintiff produced a buyer, ready, willing and able to comply with the contract? (2) Did the plaintiff comply with the necessary procedural prerequisites to prove that he was a licensed real estate broker so as to be entitled to the fruits of his efforts toward the sale of the property?

■ The trial court in its extensive findings of fact in effect found that the plaintiff had produced a ready, willing and able buyer. The chancellor found that the defendants had clearly failed to disclose to plaintiff in a timely fashion the existence of Loy Dean Smithwick as an owner. He further concluded that defendants had failed to cooperate with or keep Loy Dean Smithwick informed concerning sale negotiations. The court found that this conduct by defendants was "negligent" and that had the defendants exercised "reasonable prudence" in this regard she would likely have been able to reach a prompt and affirmative decision regarding execution of the Kroger cancellation agreement rather than being "suddenly confronted with the proposed sale." In effect, the court found that the defendants failed to exercise reasonable care regarding consummation of the contract and, in particular, the effectuation of the Kroger cancellation by May 1, 1977. We believe the evidence in this record overwhelmingly supports this conclusion.

Yet, the chancellor determined that the recovery to the plaintiff should be limited to $7,500.00 under the theory of negligent misrepresentation.[1] Based upon the factual findings of the chancellor in this cause and our own review of this record we believe the determination of negligent misrepresentation as the only basis for plaintiff's recovery to be error and such a reduction in the commission to be improper.

Apparently, the only basis for reducing the recovery awarded to Young below the stated contract amount was the determination by the trial court that: "It must also consider the *possible negligence* of Mr. Young as his testimony is that between May 18, 1976, and June 24, 1976, he was able to have the Kroger Company agree to waive its right under the lease." The chancellor further stated in his memorandum opinion that: "It must be kept in mind that Mr. Young did not see fit or was not able to obtain any definite written commitment of the [Kroger] cancellation."

However, this view presupposes a duty on the part of the plaintiff to obtain a written commitment from Kroger to this effect when the record is devoid of any proof that the plaintiff was requested by the owners to obtain any such writing. These negotiations by Young with Kroger were in regard to the first Rittenberry contract of May 17, 1976, *not* the second Rittenberry contract of December 2, 1976. The subject matter referenced by the chancellor was a waiver of Kroger's right to purchase the center, *not* the termination of Kroger's lease.

Further, one of the owners was Woolard, an attorney, who had been intimately involved in the negotiations and who ultimately was responsible for working out an agreement with Kroger for cancellation of its lease. There is no showing in the record that Young was asked or authorized to obtain a written cancellation from Kroger. Finally, plaintiff was kept in the dark about potential problems with the wife of Smithwick, III to the extent that she was never even listed as an owner under either contract, before or after the divorce. Even if allowed to deal in writing with Kroger, based on his state of knowledge, Young would have been doing so under "false flags."

It is undisputed that on April 22, 1977, Kroger orally agreed to the cancellation effective May 1, 1977. However, through no fault of the plaintiff apparent in this record, no consent was obtained by that date. On the other hand the proof is clear

---

1. The chancellor based his holding on the *Restatement (Second) of Torts* § 552(c) (1977). It states:

   Misrepresentation in sale, rental or exchange transaction.

   (1) One who, in a sale, rental, or exchange *transaction with* another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

   (2) Damages recoverable under the rule stated in this section are limited to the difference between the value of what the other has parted with and the value of what he has received in the transaction.

that but for the negligence of defendants and their non-disclosures to plaintiff and Loy Dean Smithwick, the likelihood is that Loy Dean Smithwick would have recognized this to be a good business transaction and would have promptly signed the cancellation agreement sufficient to meet Kroger's time requirements. She readily signed the document within four days of receipt of reasonable information to allow her to understand the transaction. The fact that the ultimate sales price was some $112,000.00 less than that contained in the Rittenberry contract is compelling evidence of the excellent bargain the parties had obtained through plaintiff's efforts—if only defendants had kept plaintiff and Loy Dean Smithwick informed.

One final comment must be made on the question of "possible negligence" of the plaintiff. He is much aggrieved by the fact that there was neither pleading nor proof in the record of any defense of contributory negligence or remote contributory negligence offered by the defendants. Plaintiff contends that pursuant to the provisions of T.R.C.P. 8.03 [2] such was required. His aggravation is understandable as he had no chance to offer proof or otherwise defend against such a claim since it did not exist and no mention of "possible negligence" on the part of plaintiff was made until the trial court's memorandum opinion. However, it is not necessary for us to determine whether the procedural defect by the defendants in failing to plead contributory negligence was fatal in view of our holding that from a factual standpoint there was no basis for such a finding. Additionally, the concept of contributory negligence is generally applicable to actions sounding in tort, not in contract. Under the findings of fact of the trial court in which we essentially concur we hold that as a matter of contract the plaintiff was entitled to an award against the defendants in the amount of $18,250.00, the real estate commission to which he would have been entitled had the sale to Crook, Rittenberry's assignee, closed.

We believe the proof in this record clearly sustains the proposition that the plaintiff real estate agent had done everything that was necessary to procure a buyer who was ready, willing and able to purchase the shopping center as he was engaged to do. But for the failure to disclose, inattention and lack of communication and coordination (at a minimum) of the defendants, in all probability the sale would have been consummated. Plaintiff is entitled to the full commission. In *Cheatham v. Yarbrough,* 90 Tenn. 77, 79, 15 S.W. 1076 (1891) the rule of law was well established in Tennessee that where an agent has been employed to sell real estate and has indeed procurred and presented to the seller a purchaser who is ready, willing and able to purchase the land and comply with the conditions of the sale, then the agent is entitled to his full commission from the seller, even if the sale is not consummated *if it was because of the fault or the defective title of the seller that the sale did not close.* This rule has again been applied in the more recent case of *Loventhal v. Noel,* 196 Tenn. 308, 313, 265 S.W.2d 891, 893 (1954), and is the rule applicable to this case since it was the fault of defendants—not plaintiff—that this sale did not close. *Cf. Hammond v. Herbert Hood Co.,* 31 Tenn.App. 683, 221 S.W.2d 98 (1948).

The defendants in their assignments of error say that the sale failed to close because Loy Dean Smithwick refused to sign the contract. Since there is no proof that the plaintiff had any knowledge of any right or interest of Loy Dean Smithwick in the property then that responsibility must be borne by the defendants and is no defense to the contract right of the plaintiff. As set forth in *Cheatham, supra,* it was defendants' obligation, having signed a contract of sale, to provide clear title. Additionally, the record is clear that Loy Dean Smithwick was agreeable to the sale upon being supplied with reasonable information

---

2. *Affirmative Defenses.*—In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon

to constitute ... contributory negligence ... and any other matter constituting an avoidance or affirmative defense....

regarding its terms. That information simply came too late.

▮ Further, the defendants contend that there was not a sufficient showing that Crook, the assignee of the Rittenberry contract of December 2, 1976, had sufficient economic wherewithal to close the transaction. We must respectfully reject this contention. It is clear from this record that the $1,900,000.00 net worth of Crook was more than sufficient to allow him to do everything that was necessary to close the transaction and the chancellor's implicit finding to this effect is clearly borne out by the evidence. The fact that Crook's bank accounts were small is of little significance when his financial statement is closely examined. Businessmen of prudence often keep very little of their holdings in cash, choosing to place their assets in either income producing or long-term appreciating properties. Crook's statement and his uncontradicted testimony indicated a ready ability to either convert substantial assets to cash, if necessary, or to collateralize a loan sufficient to allow him to close.

In summation, we believe the proof was overwhelming that plaintiff had produced a ready, willing and able buyer at the contract price. But for the fault of defendants in their dealings with Loy Dean Smithwick and the non-disclosure to plaintiff in that regard, both before and after the Kroger oral commitment to cancellation of its lease was obtained on April 22, 1977, the proba-

bilities are great that the sale would have been consummated.

The defendants contend that plaintiff is not entitled to recover because he did not prove with sufficient particularity that he was a licensed real estate broker as required by T.C.A. § 62–1303 [3] et seq., and therefore pursuant to T.C.A. § 62–1308 [4] he was not entitled to recover.

Plaintiff alleged in his complaint that he was a licensed real estate broker in the State of Tennessee with a principal office in Madison, Davidson County.

At trial on this subject he testified as follows:

Q. And, Mr. Young, you are in the real estate business; is that correct?

A. Yes, I am.

Q. A licensed real estate broker and salesman?

A. Yes, I am.

Q. And you were a licensed real estate broker and salesman back in 1976–77 during the time this contract was negotiated and entered into?

A. That's correct.

Defendants contend that plaintiff needed to go further and should have proved the recordation of his license as required by T.C.A. § 62–1320.[5]

▮ Defendants did not specifically challenge the fact of plaintiff's holding a

---

**3.** *License required.*—From and after July 1, 1973, it shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold himself out as engaging in or conducting the business, or acting in the capacity of a real estate broker or affiliate broker, as defined herein within this state without first obtaining a license as such broker or affiliate broker, as provided in this chapter, unless exempted from obtaining a license under § 62–1307.

**4.** *Action by broker to collect compensation.* —No action or suit shall be instituted, nor recovery be had by any person, in any court of this state for compensation for any action done or service rendered, the doing or rendering of which is prohibited under the provisions of this chapter to other than licensed brokers or affiliate brokers unless such person was duly licensed hereunder as broker or affiliate broker

at or prior to the time of performing or offering to perform any such act or service or procuring any promise or contract or the payment of compensation for any such contemplated act or service.

**5.** *Recording of licenses.*—Any person, partnership, association, company, firm or corporation receiving a certificate of license from the commission shall forthwith have it recorded in the office of the county court clerk of the county in which the licensee maintains an office, and the date of the filing of same for recording shall be evidenced thereon. Until the license is so filed for recording the holder thereof shall not exercise any of the rights and privileges therein conferred, and a license not so recorded within thirty (30) days from the date of issuance shall become void.

broker's license or the proper recording thereof in their pleading. Failure to specially plead special defense is waiver. T.R. C.P. 12.08. There was no cross-examination of Young regarding licensing, recordation or other contest in this regard at trial. This issue was first raised on appeal and as such was waived. In any event under these circumstances we hold the testimony of plaintiff that he was a licensed broker at the time that the events involved in this litigation were transpiring is more than sufficient to meet the requirements of T.C.A. § 62–1301 et seq. To hold otherwise would encourage trial and/or appeal by ambush.

■ Plaintiff seeks a reversal of the trial court's determination not to award prejudgment interest from the date of his demand for payment of a commission. We do not believe this assignment to be well taken as the award of pre-judgment interest is largely discretionary with the trial court. *Johnson v. Tennessee Farmers Mutual Insurance Co.*, 556 S.W.2d 750, 752 (Tenn. 1977); *Third National Bank in Nashville v. Cotten*, 536 S.W.2d 330, 333 (Tenn.1976). We find no abuse of discretion by the chancellor in this regard.

Accordingly, the action of the chancellor is modified to reflect an increase in the award to the plaintiff against the defendants to $18,250.00 plus interest from the date of the original judgment herein. This cause is remanded for the entry of such judgment consistent with this opinion and such other proceedings as may be necessary for the enforcement of the judgment. The costs are taxed to the defendants.

MODIFIED AND REMANDED.

TODD, P. J. (M. S.), and CANTRELL, J., concur.