Tony Reed THOMAS *v.* STATE of Arkansas

CR 90-66                                             795 S.W.2d 917

Supreme Court of Arkansas
Opinion delivered September 17, 1990
[Rehearing denied October 15, 1990.]

*James B. Bennett*, for appellant.

*Steve Clark*, Att'y Gen., *John D. Harris*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. On the afternoon of March 31, 1989, Tony Reed Thomas was observed by El Dorado police officer Jeffrey Everetts driving a 1980 Cadillac with a Texas license plate and playing a stereo in violation of an anti-noise ordinance. Everetts followed the Cadillac until he felt the area was such that he could give chase if the driver tried to flee and at that point

turned on his blue light. The Cadillac continued for another mile, at an excessive speed, stopping after Everetts turned on his siren.

Thomas had no driver's license but gave his date of birth and claimed to have a Texas driver's license. Everetts radioed the information to headquarters and the National Crime Information Center (NCIC) reported that Tony Thomas, same date of birth, was wanted in Texas for escape.

Everetts also observed that the Cadillac's vehicle identification number (VIN) had been removed from the dash. A VIN was found on the left door but it did not coincide with the license plate number (Texas XNB 228) and Thomas could not produce vehicle registration papers which matched either the number of the license plate or the VIN from the door. Moreover, radio inquiry concerning the license plate number indicated there was no information on file and no owner identification. These factors led Everetts to suspect the Cadillac was stolen. Thomas told Everetts the person wanted for escape was a different Thomas and Everetts informed him he would have to straighten that out at police headquarters.

The vehicle was towed by a wrecker and when they reached headquarters Everetts, assisted by Officers Sartor and Gorum, began an inventory search. They saw a piece of crack cocaine on the floor of the car immediately behind the passenger's seat. In the back of the vehicle a panel of stereo speakers had been installed and behind it the officers found two packets containing some forty-five particles of crack cocaine and eleven sacks of marijuana.

Tony Thomas was charged with possessing cocaine and marijuana with intent to deliver and with operating a vehicle at a high rate of speed in the vicinity of pedestrians. Thomas was convicted[1] and sentenced to fifty years and fined $16,000. By this appeal, Thomas challenges his conviction on four assignments of error: his motions to suppress and for a continuance should have been granted, evidence of two prior felony convictions was erroneously admitted at trial, and the circumstantial evidence on which his conviction was based was not consistent only with guilt

---

[1] The hazardous driving charge was dropped.

and inconsistent with every other reasonable conclusion. We find no merit in these contentions.

### Motion to Suppress

Thomas argues that his arrest was merely a pretext so that his car could be searched in violation of the Fourth Amendment. He points out that the police learned that the Tony Thomas wanted in Texas was Tony *Lewis* Thomas rather than Tony *Reed* Thomas and since the police had this information before the inventory search began there was no valid reason to proceed with the search. Finally, he argues that the inventory search was not done in conformity with an ordinance of the City of El Dorado. For all these reasons Thomas submits the trial court erred in not suppressing the cocaine and marijuana for use as evidence at his trial.

In reviewing the ruling of the trial court on a motion to suppress evidence on Fourth Amendment grounds, we make an independent determination based on the totality of the circumstances and reverse only if the ruling is clearly against the preponderance of the evidence. *Rodriguez* v. *State*, 299 Ark. 421, 773 S.W.2d 821 (1989).

It is settled law that a search may be pretextual when a stop or an arrest is shown to be merely ostensible, a pretense to mask an underlying desire to search and seize suspected contraband. *United States* v. *Lefkowitz*, 285 U.S. 452 (1932). However, there was no lack of evidence here that the initial stop was attributable either to the noise ordinance or excessive speed, or both, and nothing to suggest that some other motivation existed. Thomas denied that he tried to evade the officer, or that he was speeding, but those were matters of credibility for the trial court. Thomas did not refute the testimony that he was playing the stereo at a high level. In short, the record reflects that Everetts made a lawful stop based on specific and articulable reasons [*Hill* v. *State*, 275 Ark. 71, 623 S.W.2d 284, cert. denied 459 U.S. 882 (1982)], for conduct occurring in his presence and the developments that followed were in accordance with constitutional constraints. The relevant test is whether the search was reasonable. *United States* v. *Rabinowitz*, 339 U.S. 56 (1950). It is now beyond serious dispute that inventory searches are recognized as an appropriate and necessary exception to the warrant require-

ment of the Fourth Amendment. *Colorado* v. *Bertine*, 479 U.S. 367 (1987). Their use is for the mutual protection of the detainee and the police.

■ Another phase of the argument relates to Ordinance No. 1384 regulating the operation of towing vehicles on the streets of El Dorado, including the storage and protection of vehicles towed by such vehicles. Section 16 provides that, "Wrecker drivers shall prepare an inventory of material items in the vehicle to be towed. This is to be witnessed by the investigating officer." Thus appellant charges that the police violated their own official policy in making their own inventory search. We disagree. Nothing in the ordinance suggests in the slightest that wrecker drivers are given the exclusive authority to conduct inventory searches in all cases, including potential criminal cases. The ordinance plainly is intended to apply to the general operation of towing companies so as to minimize the problems attendant on disabled and wrecked vehicles. Nothing in the ordinance creates an inference that the police are not to conduct an inventory search when circumstances warrant. We find no merit in the argument and note that it was not offered in the trial court.

As to the follow-up report from the NCIC clarifying that the subject wanted for escape was a different Tony Thomas, Officer Everetts testified that he did not learn of the second NCIC report until the following day. Even so, the appellant maintains that the report arrived at 5:08 p.m., whereas the radio log reflects that Everetts did not leave the point of arrest until about 5:15 p.m.; thus, appellant argues, the police had information at their disposal before the inventory search began which would have removed any suspicion that appellant was wanted for escape. Since the law favors a "collective information" approach in determining the existence of probable cause [*Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980), *Perez* v. *State*, 260 Ark. 438, 541 S.W.2d 915 (1976)], it is only fair, appellant submits, for the reverse to be true as well. But the issue is not so easily answered, as LaFave makes clear in analyzing the impact on probable cause when the police have been given incorrect information:

> The point is *not* that probable cause is lacking because it turned out that the "facts" upon which the officer acted

were actually not true, for quite clearly information sufficient to establish probable cause is not defeated by an after-the-fact showing that the information was false, any more than information insufficient to show probable cause can be found adequate on the basis of an after-the-fact showing that in fact the conclusory allegations were correct.

Rather, the point is that the police may not rely upon incorrect or incomplete information when they are at fault in permitting the records to remain uncorrected.

2 W. LaFave, *Search and Seizure*, § 3.5(d) (1987).

■ However, we need not resolve that problem here, because it is clear that even if the outstanding arrest warrant factor were removed, the police still had reasonable grounds to suspect the Cadillac was stolen and would have detained Thomas on that basis:

Q. Mr. Everetts, you've stated that you were going to have the vehicle towed because the problem with the escape warrant on Mr. Thomas. In the event there had not been an escape warrant on Mr. Thomas and you had determined that the VIN number was missing, would you have also towed the car for that reason?

A. Yes, sir. If he could not have showed proof of ownership or showed any kind of positive identification on the car as the bill of sale or anything.

Q. So in this case is it my understanding that there were two reasons the vehicle was towed, is number one, the escape warrant and no identification of the vehicle being impounded for inventory purposes to protect—because of the speakers, number two, because of the vehicle in your mind might have been stolen because you've got as reported things that don't match, that being the license plate, missing VIN number, the VIN number and paperwork in the glove box?

A.   Yes, sir.[2]

It is equally clear that the trial court relied on the fact that Thomas was stopped in the first instance for a traffic violation, at which point the officer found no VIN on the vehicle, no registration, no driver's license and no vehicle registration papers.[3] Nor did the appellant make any attempt at the suppression hearing to show that the evident uncertainty as to the vehicle ownership and registration were explainable.

In sum, it is clear the police had sound reasons to stop Thomas and, from the evolving circumstances, to believe he may have been involved in criminal activity. A.R.Cr.P. Rule 3.1.

### Motion for Continuance

On the day before appellant's trial, the state amended the information to charge Thomas as an habitual offender. Thomas moved for a continuance, which was denied and he now contends the ruling constitutes reversible error. Motions for continuance address the discretionary power of the trial courts and reversal is dependent upon a demonstration of abuse. *Clay* v. *State*, 290 Ark. 54, 716 S.W.2d 751 (1986). To prevail, an appellant must also make a showing of prejudice. *Mann* v. *State*, 291 Ark. 4, 722 S.W.2d 266 (1987). No such showing having been made, or seriously contended, the point of error must fail for lack of merit.

### Evidence of Prior Conviction

In two authenticated copies of District Court judgments from Harris County, Texas, the judge and clerk duly certified and attested to the authenticity of attached copies of judgments of felony conviction involving Tony Reed Thomas. However, in the blank in the body of the declaration where the name of the signing judge should be typed or printed, nothing appears. Appellant argues that these omissions render these documents insufficient under A.R.E. 803, 901 and 902.

There is, however, no requirement that prior felony convictions must be authenticated. Certified copies are sufficient.

---

[2] Record, p. 70.
[3] Record, p. 151.

*Ply* v. *State*, 270 Ark. 554, 606 S.W.2d 556 (1989). Arkansas Code Annotated § 5-4-504 specifically permits the use of certified copies and, indeed, allows for the establishment of previous felony convictions "by *any evidence* that satisfies the trial court beyond a reasonable doubt." (Our emphasis.)

### Motion For a Directed Verdict

■ When the state rested its case the appellant moved for a directed verdict and argues on appeal that the trial court's denial was incorrect. Without any implication of merit, the argument may be answered by noting that the motion was not renewed at the close of the trial. *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1989); A.R.Cr.P. Rule 36.21(b).

The judgment appealed from is affirmed.