Dwight SULLINGER *v.* STATE of Arkansas

CR 92-573                                    840 S.W.2d 797

Supreme Court of Arkansas
Opinion delivered October 26, 1992

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Dwight Sullinger, an habitual offender, appeals from his conviction for first-degree murder and felon-in-possession-of-a-firearm for which he was sentenced to life imprisonment on the murder conviction and six years for possession of a firearm. He raises several points on appeal: (1) whether the court erred in failing to sever the murder charge from the felon-in-possession charge; (2) whether the court erred in allowing the state to introduce unsigned judgments of his past felony convictions; (3) whether the court erred in allowing unsigned judgments without proof that the pleas were constitutional; (4) whether the court erred in failing to grant a mistrial on the basis of prejudicial remarks relating to cocaine by the prosecutor; and, (5) whether Ark. Code Ann. § 5-2-207 (1987), which provides that voluntary intoxication is not an affirmative defense, is unconstitutional. We hold that there was no prejudicial error committed, and we affirm the conviction.

## FACTS

The essential facts occurred on April 15, 1991, when Dwight Sullinger shot and killed Pocahontas Police Officer Scotty Bennett. Several hours before he was killed, Bennett, together with Pocahontas Officers Kevin Faust and Charles Buazard, had responded to a disturbance at Sullinger's home. As the officers were preparing to leave, Sullinger asked Bennett whether he would return later if the appellant needed him. Bennett agreed to do so.

The three officers left Sullinger's home and went to dinner. While at dinner, a call came in to the officers at about 7:15 p.m. to return to the appellant's house. Officers Bennett and Faust left in their patrol car with Stan Mitchell, a reporter from the *Jonesboro Sun*, in the back seat. Officer Buazard followed in his patrol car. Officers Bennett and Faust and Stan Mitchell arrived at the appellant's home first, and Officer Bennett got out of the car. At that point, Sullinger came out of his house with a shotgun held along the side of his leg. According to Stan Mitchell, Sullinger then said: "Scotty, you deserve this." He raised the shotgun and shot and killed Bennett. He then threatened Officer Faust with the shotgun. Officer Buazard arrived at the scene subsequent to

the shooting.

After firing at Officer Bennett, Sullinger ran inside his house and shot himself under the chin with the same shotgun, wounding himself. The appellant then came out of his house without the shotgun and was taken into custody by Officer Buazard. He was charged with capital murder, and the state requested the death penalty. Later, the information was amended to charge him as an habitual offender and with the felon-weapon charge.

Before the trail, Sullinger moved for severance of the capital-murder charge and the weapon charge. The motion was denied. During the five-day trial in December 1991, Officers Faust and Buazard testified that the appellant was angry at Officer Bennett because Bennett had cited him for DWI in March 1991. Sullinger mounted a defense on the basis that his alcohol and tranquilizer abuse had eroded any purposeful intent to commit murder. Following the trial, the jury convicted him of first-degree murder and of the felon-weapon charge. The penalty phase ensued, during which time two prior felony convictions were presented to the jury. The appellant, as noted earlier, was then sentenced to life imprisonment for murder and six years on the felon-weapon charge.

## I. SEVERANCE

Prior to trial, the appellant moved to sever the charges, and the motion was denied. At the commencement of the trial, the information with the joined charges was read to the jury, and defense counsel moved for a mistrial. That motion, too, was denied.

During the state's case, the prosecutor introduced into evidence an exhibit containing a certified copy of one felony judgment[1] against Sullinger for breaking and entering fourteen years ago when Sullinger was age seventeen. Sullinger objected to the evidence, and the objection was overruled. A renewed motion for a mistrial was not made at that time. Nor did the appellant request an admonition to the jury. The appellant also objected to

---

[1] During the penalty phase after conviction, two prior felony judgments for breaking and entering different establishments on the same night were introduced.

the felon/weapon instruction to the jury, but he requested no curative instruction at that time. Prejudicial error by virtue of the admitted felony conviction is now asserted on appeal.

The issue before us is not unlike that raised in a recent case where the charges of first-degree murder and felon-in-possession-of-a-firearm were joined and tried together. *See Ferrell* v. *State*, 305 Ark. 511, 810 S.W.2d 29 (1991). In *Ferrell*, we held that the denial of the motion to sever was error under Ark. R. Crim. P. 22(a) because the two offenses joined were not part of "a single scheme or plan," and therefore severance should have been granted. However, we further held that the prejudice was rendered harmless by the circumstances in the case and particularly by the fact that 1) a curative instruction was given, 2) Ferrell voluntarily took the stand where his prior conviction was brought out on cross-examination, and 3) no further objection was made by the defense that Ferrell was compelled to testify because of the joined offenses. We further noted that the evidence against Ferrell was overwhelming with three eyewitnesses testifying to the murder.

The case before us has all of the critical *Ferrell* factors save one — there was no curative instruction or admonition to the jury that the prior felony should not be considered in the murder case. The state in its brief argues that the appellant should have asked for curative relief, and his failure to do so precludes him from raising the issue now. In making the argument, the state cites us to *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986). In *White*, the issue was whether a prior bad act — a previous fight between the appellant and the victim — could be introduced. The defense made an objection to the evidence, but it was overruled. No demand for a mistrial or admonition or curative instruction to the jury followed. We said: "Inasmuch as we agree with the trial court that the testimony was admissible, the appellant would have been entitled to a limiting instruction on the purpose for which the testimony was to be considered. Because such an instruction was not requested, appellant cannot now claim error." 290 Ark. at 140, 717 S.W.2d at 789.

■■ In the case before us, it was error to join murder and the weapon charges for trial. *Ferrell* v. *State, supra*. However, had a curative instruction or admonishment been given, the facts

would have been virtually identical to *Ferrell*. The issue then becomes whose duty was it to request curative relief. We believe that burden falls upon the defendant, and the failure to request curative relief cannot inure to his benefit on appeal.

■ We further observe that though the appellant moved for a mistrial at the beginning of the trial, he did not renew his motion when the felony evidence was introduced or when the appellant took the stand or when the jury was instructed. He simply objected to the introduction of the felony judgment. A motion for a mistrial and an objection to evidence are categorically different. A mistrial motion asserts that the error is beyond repair and cannot be corrected by any curative relief. An objection to evidence does not carry with it the same gravity, and an admonition or instruction to the jury are acknowledged means of ameliorating the situation. Here, Sullinger requested no such relief, and we agree that he should not now be allowed to benefit from that omission and distinguish the *Ferrell* decision on that basis for appeal purposes.

We, therefore, hold as we did in *Ferrell* that trying the two charges together was error, but the error was rendered harmless by the circumstances of this case. The proof of guilt in this case was considerable with two eye witnesses to the killing. Moreover, the appellant voluntarily took the stand to assert his defense of diminished capacity to engage in purposeful conduct. By doing so, he was subject to cross-examination on his past criminal record though he discussed his criminal record on direct examination. Again, there was no suggestion by the appellant that he was compelled to take the stand due to the introduction of the one felony judgment during the state's case-in-chief. Lastly, in this case as opposed to *Ferrell*, the appellant was charged as an habitual criminal, and the two prior felonies became admissible during the penalty phase of the trial.

## II. UNSIGNED JUDGMENT

■ For his second point, Sullinger seeks to exclude the two unsigned felony judgments on the basis that because they were not signed by the judge, there was no proof that they were valid. In support of this position appellant cites us to a civil rule, Ark. R. Civ. P. 58, which provides that a judgment must be signed to be

valid.

■ This issue of sufficient judgments was decided in *Thomas* v. *State*, 303 Ark. 210, 795 S.W.2d 917 (1990). In *Thomas*, we held that copies of the defendant's prior judgments which were not signed were admissible for enhancement purposes in the penalty phase because they were authenticated by evidence that satisfied the trial court of their validity beyond a reasonable doubt. The evidence before the circuit judge in this case supports his decision of their validity. Not only did he have certified copies of the two informations and judgments but also the trial court's docket sheets evidencing the guilty pleas. To be sure, unsigned judgments in other contexts might well be invalid, but the appellant has presented no authority other than a civil rule to support their invalidity when introduced during the penalty phase of a trial. There was no abuse of discretion by the circuit judge on this point.

### III. CONSTITUTIONALITY OF JUDGMENTS

Sullinger next argues that an alternative reason for not admitting the unsigned judgments is that, because they were not signed, there is no proof they were obtained in compliance with his constitutional rights. He cites us to Ark. R. Crim. P. 24.4 which provides that a defendant must be advised of his right to counsel.

■ Here there was no constitutional infirmity apparent from the judgments and supporting court records. The records showed that he was represented by counsel on both matters. The appellant has the burden of producing a record exhibiting prejudicial error. *See Kittler* v. *State*, 304 Ark. 344, 802 S.W.2d 925 (1991). The only alleged infirmity that the appellant has shown is that the judgments were not signed. Failure to sign a judgment, however, does not, in itself, demonstrate that the judgment is invalid. The court did not err on this point.

### IV. PROSECUTORIAL MISCONDUCT

The appellant argues that the prosecutor committed prejudicial error by questioning witnesses repeatedly in such a way as to convey Sullinger had a cocaine problem. The state presented evidence as part of its case that Sullinger had a history of

substance abuse, including cocaine and LSD usage. The defense countered that there was no cocaine usage shown in the past eleven or twelve years; rather, his problem centered upon alcohol abuse and abuse of Xanax, a tranquilizer.

Despite that fact, the prosecutor on several occasions interrogated witnesses in such a manner as to highlight the appellant's cocaine abuse. He first raised the issue with state hospital psychiatrist, Dr. Wendell Hall, on redirect, and this was objected to a repetitive. The circuit judge sustained the objection.

Cocaine usage was again raised on redirect examination of state witness Dr. John Anderson, a state hospital psychologist, and an objection was made and sustained. Next, during the appellant's case, the prosecutor was cross-examining defense witness Dr. James Murray, a Pocahontas physician, and the following colloquy took place in front of the jury:

> PROSECUTOR: Well, did he tell you that he was a marijuana user?
>
> DEFENSE ATTORNEY: Judge, I object to that, that's improper cross examination.
>
> PROSECUTOR: Judge, I'm. . .
>
> DEFENSE ATTORNEY: Dr. Murray has indicated that he has no opinion concerning his ability to discriminate and Mr. Stallcup's been trying to do this all day to prejudice this jury.
>
> PROSECUTOR: Judge, I'm trying to. . .
>
> DEFENSE ATTORNEY: He's trying to make the jury think that Mr. Sullinger abused cocaine. He keeps trying to do that and I object.
>
> PROSECUTOR: If I can answer Mr. Jarboe. He's gone into, "Dr., did he, do your records show anxiety," and all this. I'm trying to find out if this doctor knew about this man's past drug history, if he was informed of all this particularly before he put him in Green Leaf (sic). I mean he, he may have thought this man had an alcohol problem when really it was, it was a cocaine problem, it was. . .
>
> BY THE COURT: Step up.

PROSECUTOR: Sir?

BY THE COURT: Step up.

DEFENSE ATTORNEY: I move for a mistrial. Mr. Stallcup has just told the jury that he had a cocaine problem and I move for a mistrial, Your Honor.

The circuit judge then ordered the prosecutor, out of the hearing of the jury, not to mention cocaine again because it was irrelevant. The prosecutor responded that cocaine use leads to paranoia. After continued discussion and completion of Dr. Murray's testimony, the circuit judge asked the appellant's attorney whether he wanted the jury admonished. He answered in the affirmative and also added that he moved for a mistrial. The judge then told the jury to disregard the reference to the "cocaine problem." Defense counsel renewed his motion for a mistrial, and it was denied.

We have no doubt that a trial tactic of the prosecutor was to tag Sullinger with the label of a cocaine abuser. The prosecutor argued that he was doing this because cocaine abuse could lead to paranoia, even though there was no proof that Sullinger had used cocaine in eleven or twelve years. We question the strategy and agree with the circuit judge that the prosecutor pushed the issue to the brink of a mistrial.

At the same time, the judge asked defense counsel if he wanted the jury admonished, and counsel said he did. A strong admonition was made. Though counsel also renewed his motion for a mistrial, he could not have it both ways. We have held in the past that a strong admonition can cure any possible prejudice resulting from prosecutorial misconduct. *See, e.g., Porter* v. *State* 308 Ark. 137, 823 S.W.2d 846 (1992).

■ We hold that the prosecutor's conduct was not so drastic as to warrant a mistrial. *See Burkhart* v. *State*, 301 Ark. 543, 785 S.W.2d 460 (1990). We further hold that any potential prejudice was cured by the admonition.

We turn next to the prosecutor's questioning about homosexuality on voir dire. Sullinger did not raise this issue, and we do so under the authority of Supreme Court Rule 11(f) because a life sentence is involved. The prosecutor began by questioning a

prospective juror:

THE PROSECUTOR: Mr. Chesser, do you believe that one man placing another man's penis in his mouth and sucking on it is normal human behavior, if the guy doing the sucking enjoys it?

DEFENSE COUNSEL: I move for a mistrial. I object to the question. It's prejudicial and I move for a mistrial.

THE COURT: The objection is going to be sustained. The motion for mistrial is overruled. The jury is to disregard the question, and it does not apply to the defendant.

Later, as part of voir dire, this discussion ensued:

PROSECUTOR: Is there anybody that feels that homosexuality is normal human behavior?

DEFENSE ATTORNEY: Objection, Judge. Now Mr. Stallcup—may we approach the bench?

(Thereupon the following is held at the bench out of the hearing of the prospective jurors.)

BY THE COURT: I know where you're coming from on that, you're going to use it in the cross examination of the psychiatrists.

PROSECUTOR: Judge, I'm trying to pick the best jury I can and that's a perfectly. . .

BY THE COURT: I understand that. But the problem is is that you're making it sound like Dwight Sullinger is homosexual.

PROSECUTOR: I haven't said that.

BY THE COURT: I know you haven't said it yet but I said it to you.

PROSECUTOR: I'll be glad to say that to them.

BY THE COURT: I think that if you're going to ask it is [sic] that you need to preface with the fact that you're not implying that Dwight Sullinger is a homosexual.

PROSECUTOR: Okay.

The circuit judge then admonished the jury that there was no allegation that Sullinger was homosexual or that that was the reason for the question.

Further on in the trial, during the direct examination of Dr. Anderson, the prosecutor asked a question about perverse sexual activity involving urinating into another man's mouth. Defense counsel did not object but asked for an instruction, and the judge told the jury to disregard the question as irrelevant.

The issue of homosexuality, as raised, clearly disturbed the circuit judge because of the potential for prejudice. The judge was correct to be concerned. Any suggestion that Sullinger was homosexual or was engaging in perverse sexual activity such as urinating into another's mouth could have prejudiced the jury. The prosecutor argues that he was within his bounds to pursue these questions because he intended to interrogate the defense expert, Dr. Douglas Stevens, on his theories and studies regarding sexuality in an attempt to impeach his credibility and expertise. Later in the trial, he did, in fact, cross-examine Dr. Stevens about sexuality. Moreover, the judge specifically admonished the jury that the earlier questions asked on voir dire and to Dr. Anderson were either not raised to suggest Sullinger was homosexual or were irrelevant.

Laying the groundwork for the future cross-examination of a witness can be a perilous undertaking when the subject matter is explosive as it was in this case. However, because the jury was admonished each time the initial sexuality questions were posed, we hold that prejudice was avoided. Furthermore, the prosecutor's subsequent impeachment questions posed to Dr. Stevens about his work in the area of sexuality clarified for the jury the purpose behind the earlier questions.

## V. SELF-INDUCED INTOXICATION STATUTE

Sullinger strongly contends that an individual cannot form the requisite intent necessary to commit murder if he is intoxicated. Under Ark. Code Ann. § 5-2-207 (1987), voluntary intoxication is no longer an affirmative defense. The appellant argues that this relieves the prosecution of its duty to prove the element of intent beyond a reasonable doubt which violates his

due process rights.

■ We have repeatedly held that Ark. Code Ann. § 5-2-207 (1987) is constitutionally sound. *See, e.g., Cox* v. *State,* 305 Ark. 244, 808 S.W.2d 306 (1991); *White* v. *State, supra.* Moreover, the appellant was not harmed by this statute, as he testified at length about his history of alcohol abuse. His medical records from the Greenleaf Center where he was treated for alcoholism and his DWI record were admitted, and three eyewitnesses testified that he had been drinking at the time of the shooting. (He registered 1.6 on the breathalyzer after his arrest.) Thus, even though the appellant could not use voluntary intoxication as an affirmative defense, he was able to bring, and indeed did bring, enough evidence of his history of alcohol abuse before the jury for its consideration.

Finally, there was, most assuredly, ample evidence of purposeful intent in this case as attested to by two eye witnesses to the shooting.

In sum, this case does not warrant a reversal. This was a five-day trial in which a man initially charged with capital murder with the death penalty requested was convicted of the lesser offense of first degree murder and sentenced to life imprisonment. Though problems abounded during the course of the trial, we cannot say that the appellant was denied a fair trial or that the circuit judge abused his discretion.

The record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.

HOLT, C.J., DUDLEY, and NEWBERN, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. Appellant unquestionably shot and killed a fine police officer who was acting in the line of duty in Pocahontas. He was charged with capital murder and being a felon in possession of a firearm. As set out in the majority opinion, "[I]t was error to join murder and the weapon charges for trial. *Ferrell* v. *State . . .* [305 Ark. 511, 810 S.W.2d 29 (1991)]." Also, as set out in the majority opinion, the

prosecutor was guilty of misconduct. The majority opinion recites, "We have no doubt that a trial tactic of the prosecutor was to tag Sullinger with the label of a cocaine abuser." The record shows that appellant had not used cocaine for twelve years, and the prosecutor knew it. In addition, there was no evidence that appellant was a homosexual or that sex or sexual preferences had anything to do with the killing of the police officer. Yet, as set out in the majority opinion, the prosecutor in *voir dire* asked a prospective juror, "Mr. Chesser, do you believe that one man placing another man's penis in his mouth and sucking on it is normal human behavior, if the guy doing the sucking enjoys it?" With these admitted errors, the majority opinion summarily holds that "there was no prejudicial error committed." I am unable to agree with such a holding.

In *Ferrell* v. *State, supra*, cited in the majority opinion as authority for its holding, we held that a similar error in joining offenses was not prejudicial because the evidence of guilt was overwhelming. In that case, appellant was charged with first degree murder and claimed self-defense. It was one or the other: guilty or not guilty. We held that the error "was rendered harmless by the circumstances of this case." *Ferrell*, 305 Ark. at 516, 810 S.W.2d at 32. In the case at bar it was also unquestioned that appellant killed the victim, but the defense in this case raised questions about appellant's mental capacity to form the requisite intent. It was not one or the other. Instead, it was a case of guilty of either capital murder or first degree murder or second degree murder or manslaughter. He was charged with capital murder, and the State sought to convict him of that charge. His defense was lack of mental capacity to form the requisite intent. The jurors may have had some question about his mental capacity to form the required intent for capital murder since they found him guilty of first degree murder. The jury might have found him guilty of second degree murder if the prosecutor had not been guilty of misconduct, which may have been designed to cause prejudice, and had the trial court not erred. This case was not a case of appellant being simply guilty or not guilty. It was a case in which the degree of the crime was governed by his capacity to form the required intent. Thus, I cannot agree that the prosecutorial misconduct, which may have been designed to cause prejudice, and the trial court's error, were harmless.

Accordingly, I dissent.

HOLT, C.J., and NEWBERN, J., join in this dissent.