Carleton Harris, Chief Justice.
 

 On September 1, 1970, appellant, Charles Etta Cox, was arrested in Grant County, Arkansas, and charged by Information with Grand Larceny. Preceding her trial on February 28, 1972, a hearing was conducted on her motion, earlier filed, to suppress certain evidence. Appellant called one witness, Trooper James Hale for this hearing, although the motion had raised issues relating to the absence of a search warrant, the absence of probable cause to justify the arrest, the unreasonableness of the search, and the authority of the officers to seize the property which was involved. The court denied the motion, and the case proceeded to trial; at the conclusion of the evidence, the jury retired and found appellant guilty, fixing her punishment at ten years confinement in the Arkansas Department of Correction. From the judgment so entered, appellant brings this appeal. Trooper Hale, in chambers, testified that he received a radio report from Deputy Sheriff A. J. Pitts concerning suspected shoplifters, the deputy giving a description of the occupants of the car, and the automobile in which they were riding. The officer stopped a 1956 Mercury which conformed to the description given and which was occupied by three black female adults and two children, on Highway 270 in Grant County, travel-ling toward Pine Bluff. Two bags
 
 [1]
 
 were in sight, on the floorboard on the right hand side of the front seat, and were open at the top, disclosing merchandise, including clothing. The car was being operated by appellant and the trooper directed that it be driven back to Sheridan. The bags were taken out of the car and subsequently, after acquiring a search warrant, the car was thoroughly searched, but no additional contraband found.
 

 The property taken from the car was offered as exhibits. The court asked the trooper if the bags described were in open view to him, to which Hale responded “They were. They could have been seen from the outside of the vehicle.” The motion to suppress was denied. Hale subsequently testified that the car was stopped between 5:00 and 6:00 P.M. and that the automobile was being driven by appellant. An older woman was sitting in the front with her and a younger woman was in the back seat with the children. After arriving back at Sheridan, Mrs. Olga Winkle, the owner of the store, identified the merchandise as coming from her store. She testified that the value of the property was One Hundred and Four Dollars and a few cents.
 
 [2]
 
 Barbara Pruitt, employed at the store by Mrs. Winkle, testified that on September 1 she was the only clerk in the store, had several customers, and three black women came in, “mingled around in the store”, then all separated, going to different places in the store, and, according to the witness, stayed quite a while. She identified appellant as one of the persons in the store. She said that she asked them several times if she could help and “when they finally left J got to checking around and found a box, you know, that had been merchandise, had been taken out of it and the box thrown under the counter.” This box had contained lingerie. She said the women made no purchases.
 

 Barbara Bradshaw operates a beauty shop across the street and she stated that Mrs. Winkle was in the shop having her hair fixed. She noticed a red and white 1-955 or 1956 Mercury stopped in the front, noticing it because a small child kept honking the horn. Subsequently, around 5:00 or 6:00 P.M. she saw the same automobile parked in front of the store. Mrs. Winkle testified that, while sitting in the beauty shop, she observed the automobile and saw three black women get out of the car and go into her store. Subsequently, the persons returned and she saw appellant, who appeared to be carrying a shopping bag, get into the car and drive off. Upon returning to her establishment, she was shown the empty box which had contained merchandise just received.
 
 [3]
 
 Thereupon, she called Deputy Sheriff Pitts and described the car to him. Later in the afternoon, she identified appellant as the person who got into the car while she (the witness) was in the beauty shop, and she identified appellant at the trial as the same person. Mrs. Winkle stated that when she arrived in the evening, the car was being unloaded and the officers brought in pillow cases full of merchandise and a lot of merchandise fell out of one of the containers.
 
 [4]
 

 Deputy Pitts, relative to receiving information, testified:
 

 “I believe she called in by phone and told me what had happened about a shop lifting. She thought she had been shop lifted over there and she had information the type car and occupied by people and described them to me and I in turn gave it to Trooper Hale to be on the lookout for this vehicle.”
 

 The deputy stated that when the car was driven back to the courthouse, permission was sought to look in the vehicle and they were told it was all right. He said tags were still on the merchandise. Sheriff Lewis Shirron also testified that the merchandise was new,_ still had the tags, sizes, etc., and he identified appellant as being present. When the merchandise was identified by the owner, appellant was arrested and subsequently charged with grand larceny.
 

 It is first argued that appellant’s motion to suppress should have been granted, appellant contending that the evidence was illegally seized, it being stated that she was not under arrest at the time and that there was no search warrant when the property was taken from the car. Appellant asserts that the court apparently relied upon what is commonly referred to as the “plain view rule”, but that this rule cannot be relied upon in the present instance. Appellant cites Coolidge v. New Hampshire, 403 U.S. 443, 29 L. Ed. 2d 564, as pointing out that the use of “plain view” as a descriptive phrase is not coterminous with its use as a legal concept and that before this doctrine comes into effect, there must be a justifiable prior intrusion. Appellant argues that though the visual observation was legitimate, it did not justify the intrusion itself, but only furnished probable cause for the issuance of a search warrant. Actually, in Coolidge, the court held there were no exigent circumstances justifying the warrantless search of a car there involved, and it was pointed out that the “plain view” theory did not apply where the police had ample opportunity to obtain a valid warrant, knew in advance the car’s description and location, had every intention of seizing it when they entered upon the petitioner’s property, and no contraband or dangerous objects were involved. A contrary result was reached in Ker v. California, 374 U.S. 23, 10 L. Ed. 2d 726; Chambers v. Maroney, 399 U.S. 42, 26 L. Ed. 2d 419; and Warden v. Hayden, 387 U.S. 294, 18 L. Ed. 2d 782. In these cases, a warrantless search and seizure of evidence was approved because of the exigencies of the situation. In Chambers, a warrantless search of a car was made, resulting in a seizure of evidence. This car at the time, had been taken to a police station, but the court noted that it could have been searched on the spot where it was stopped since | there was probable cause to search and it was a fleeting! target for a search. The court added that the probable-¡ cause factor was still in existence at the station house and' it was commented that the mobility of the car was still: present; the court said that in terms of practical conse-j quences, there was little to choose between an immediate j search without a warrant, and the car’s immobilization until a warrant was obtained. “Given probable cause to search, either course is reasonable under the Fourth Amendment.” In this opinion, the court also stated:
 

 “In terms of the circumstances justifying a warrant-less search the Court has long distinguished between an automobile and a home or office. In Carroll v. United States, 267 U.S. 132 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court' held that automobiles and other conveyances may be searched without a warrant in circumstances that' would not justify the search without a warrant: of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize.” .!
 

 However, in Ker the court upheld a warrantless search and seizure of evidence because of exigent circumstances at a home; likewise in Warden, the court upheld an entry into a suspect’s house and a subsequent warrantless search because “the exigencies of the situation made the course imperative.”
 

 What are the circumstances in the case before us? Officer Hale had received a radio communication from a deputy sheriff of Grant County that merchandise was suspected to have been taken at Olga’s Fabrics and Fashions Store, and the suspects were described, along with a description of the automobile. The officer observed such a car, stopped it, saw the sacks or pillow cases on the front floorboard, partly open, and articles of merchandise and wearing apparel were observed by the officer while standing outside the vehicle. Certainly this is a matter of evidence appearing in “plain view”; likewise, it would appear, with the information that Hale had received, that he had justification for stopping this automobile and upon observing the merchandise on the floorboard, ordering the car driven back to Sheridan. To first have obtained a warrant would mean, of course, that the occupants of the car could have driven on, with full opportunity to dispose of the merchandise in the vehicle. In other words, there was complete justification for an intrusion (considering the detention of the car as an intrusion). These were exigent circumstances requiring instantaneous action to preserve the existence of the evidence sought to be seized.
 

 Appellant argues that the primary essential element in a warrantless search and seizure is that such a search is incidental to a lawful arrest; that appellant had not been arrested, was not arrested until after the seizure of the articles, and such seizure was accordingly unlawful. We do not agree with this argument. In Carroll v. United States, supra,
 
 [5]
 
 the court stated “The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.” We have already stated that Hale was justified in the intrusion, and he certainly had reasonable cause to believe that the contents of the automobile offended the law.
 

 It is next asserted that appellant’s motion for directed verdict should have been granted at the close of the State’s testimony as there was insufficient evidence to convict her of the crime of grand larceny. Appellant correctly points out that this court has held that where circumstantial evidence alone is relied upon to establish guilt of one charged with a crime, such evidence must exclude every other reasonable hypothesis than the guilt of the accused. Appellant then states that the most logical “reasonable hypothesis” in the case before us is that either or both of the women with Charles Etta Cox stole the merchandise, since both of them pleaded guilty.
 
 [6]
 
 It is argued that the containers holding the merchandise were on the floorboard near the right hand front seat of the car and there is no testimony that the bags were in the custody of, or under the control of, the appellant. It is true that no witness saw appellant take the merchandise, but wé do not agree that it can be said that Charles Etta Cox did not have possession. Appellant certainly was in control of the automobile since she was driving it; the merchandise was in the automobile. It will be remembered also, that Mrs. Winkle, who was having her hair fixed in the beauty shop, testified that she observed appellant carrying what appeared to be a shopping bag, and saw her get into the car and drive off. It is stated by counsel for the State that research has not disclosed any Arkansas cases dealing specifically with stolen property found in vehicles, but authority from other states is cited, and the rationale appears to be entirely logical. In Lawson v. State, 82 So. 2d 812, the 2nd Division Court of Appeals of Alabama, in affirming a conviction of grand larceny, stated:
 

 “Possession is not limited to actual manual control upon or about the person. If under one’s power and dominion the thing is possessed. That the appellant had knowledge of the presence of the stolen groceries can reasonably be inferred from his possession and control of the truck. Certainly, it was for the jury to so determine in the absence of any evidence by the appellant tending to justify his technical possession of the groceries.”
 

 In Mason v. State, 262 A. 2d 576 (1970), the Court of Special Appeals of Maryland sustained the conviction of one who was driving a car containing stolen license plates. Two other men were also in the car at the time of the arrest. The court stated that appellant’s presence in, and driving of the automobile, were sufficient to raise the inference that he was a thief and the court then said. “Appellant in no way refuted the inference and his conviction therefore must stand.” Of course, in Arkansas, the possession of recently stolen property, if not explained to the satisfaction of the jury, is sufficient to sustain a conviction of larceny. Hammond v. State, 232 Ark. 692, 340 S. W. 2d 280. To paraphrase the language in the cases cited, it certainly can reasonably be inferred from appellant’s possession and control of the automobile, that she had knowledge of the presence of the stolen merchandise (which after all was only two or three feet away from her). Let it be remembered that appellant in no way refuted the inference that she was in possession of the property. As long ago as 1900, in the case of Lackey v. State, 67 Ark. 416, 55 S.W. 213, in an opinion by Justice Riddick, this court stated that the doctrine of reasonable doubt applies to the general issue of guilty and not guilty, but that it does not apply to each item of testimony or to each circumstance tending to show the guilt of the defendant. The proof on behalf of the State was ample to make a jury question, and it was the function of that body to pass upon the matter.
 

 Finally, it is asserted that the court committed error in refusing to give appellant’s requested Instructions No. 1 and No. 2. The first told the jury that the defendant was presumed to be innocent throughout the trial and that the State must prove her guilt beyond a reasonable doubt. The second questioned instruction defined reasonable doubt. We find no merit in either contention since the subject matter in both instructions was clearly covered, and even more comprehensively, by the court in other instructions given to the jury.
 

 On the whole case, finding no error, the judgment is affirmed.
 

 It is so ordered.
 

 [1]
 

 These were pillow cases.
 

 [2]
 

 The merchandise was subsequently returned to Mrs. Winkle and placed in stock.
 

 [3]
 

 This particular box contained a negligee set valued at $13.&.j.
 

 [4]
 

 Articles taken included a negligee set, a suit, two dresses, bras and panties.
 

 [5]
 

 This court has relied on the rationale of Carroll in numerous cases. For instance, see Tygart v. State, 248 Ark. 125, 451 S.W. 2d 225 (1970), cert. denied, 400 U.S. 807, 27 L. Ed. 2d 36; Moore, et al v. State, 244 Ark. 1197, 429 S.W. 2d 122 (1968), cert. denied, 393 U.S. 1063, 21 L. Ed. 2d 705 (1968); and Burke v. State, 235 Ark. 882, 362 S.W. 2d 695 (1962).
 

 [6]
 

 Appellant herself twice pleaded guilty. On September 24, 1970, she entered a plea and was sentenced to a term of ten years in the penitentiary, with seven years suspended. Thereafter, a motion was filed by her then attorney to set aside her plea of guilty because she was not aware of the severe nature of the crime to which she pleaded guilty and the court granted this motion. On January 12, 1971, she again entered a plea of guilty and received the same sentence. Thereafter, her present attorney filed a motion to vacate the sentence under Criminal Procedure Rule I, alleging that her rights under the Federal and State Constitutions had been violated and asking that her sentence be vacated and the Circuit Court granted that motion. The case thereafter proceeded to trial on February 28, 1972.