Charles TILLMAN *v.* STATE of Arkansas

CR 80-164                                        609 S.W. 2d 340
Supreme Court of Arkansas
Opinion delivered December 22, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Linda Faulkner Boone*, Deputy State Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Charles Tillman was found guilty of theft by feloniously receiving and retaining a television set valued in excess of $100, knowing or having good reason to believe it was stolen. He was sentenced to five years imprisonment after a jury trial on January 25, 1979. On appeal, Tillman contends that the trial court erred in denying his motion to quash a search and to suppress as evidence the television, two screwdrivers and a knife seized as a result of that search. He also contends that the evidence was not sufficient to support his conviction of the felony of theft by receiving because there was no showing that the value of the television was in excess of $100. We do not agree with either contention, so we affirm the judgment.

On November 23, 1978, at about 7:50 p.m. Marshall Clarey, who resided in Apartment 5, at 969 Holly Street in Fayetteville, noticed an older model gold Cadillac automobile parked in the parking lot at the apartment complex. He observed a black male wearing a coat and a knit hat leaning against the car. A few minutes later, after the car had left, Clarey noticed that the door to a neighbor's apartment was open. Knowing the neighbor was out of town, Clarey entered the apartment, discovered that the neighbor's television set was missing, and called the police. While waiting for the police to arrive, Clarey saw the same automobile pass the apartment twice and noticed that it was occupied by two people.

Officer George Coffman, a sergeant in the Criminal Investigation Division of the Fayetteville Police Department was advised of the burglary of the apartment by a radio message about 8:15 p.m. He was told that a gold Cadillac in which there were one or two men, one of whom was black, was seen leaving the apartment complex where the burglary occurred. He said he received a message 10 or 15 minutes later that a television set had been taken. Coffman said that

he was aware that, about three days earlier, a gold Cadillac had been seen by the victim of a burglary about three hours before his apartment had been burglarized, that he knew that Tillman drove a gold Cadillac, that he had "worked" several burglary cases in which Tillman was convicted and that 23 apartment burglaries had been cleared when Tillman had been arrested. He directed Paul Wood and Mark Hanna, also of the Fayetteville Police Department, to go to the area in which Tillman lived. Coffman stationed himself about a half block from the residence at which Tillman was living.

Paul Wood testified that he saw and stopped appellant in the gold Cadillac in a public "alleyway." According to both Tillman and Officer Coffman, the alleyway was Meadow Street which ran behind the Ozark Theatre Building. Wood testified that he had been told by Coffman that a car of that description with a black person driving it, had been seen leaving the scene of a burglary. Wood asked the driver for his driver's license for identification. Tillman gave the officer his driver's license and the officer took it, went back to his police car and advised Coffman by radio that he had stopped the car. Wood said that he then awaited Coffman's arrival. Coffman testified that he arrived at the vehicle where Tillman was within three minutes after he received Wood's message, which was about 8:35 p.m., only about 20 or 25 minutes after he had received the first report of the burglary. He said that Tillman knew him and spoke to him. At that time, Officers Mark Hanna and Mike Carl had also arrived on the scene. Coffman said that the Tillman car was empty and that Tillman was in Officer Wood's car. Coffman testified that he told Tillman that a car matching the description of Tillman's car had been seen at a burglary a short time earlier and that officers believed that they had reasonable grounds to search his car for a stolen television. According to Coffman, Tillman asked if he had a search warrant, and when he told Tillman that he did not, Tillman said he could not search the car. Coffman said he again advised Tillman that his understanding of the law was that the officers did have probable cause to search the car, asked Tillman for the car keys, and, when Tillman refused to give them to him, warned Tillman that if the officers could not have the keys, the car would be forcibly opened. Coffman said that Tillman

became unruly and that the officers found it necessary to handcuff him for his protection and theirs. Coffman then removed the keys to the automobile from Tillman's pocket, opened the trunk and found a Sears color television, some hubcaps, two screwdrivers, a knife and a tape recorder.

Both parties say that Tillman had not been arrested at the time of the search and it is admitted that no warrant authorizing the search had been issued. The trial judge denied the motion to suppress the evidence, holding that probable cause existed, that the requirements of Rule 14.1, [Arkansas Rules of Criminal Procedure, Ark. Stat. Ann. Vol. 4A (Repl. 1977)] had been met and that the search was reasonable.

There were minor conflicts between the testimony of the officers and that of Tillman at the suppression hearing. The only conflict that might be considered significant is that Tillman testified that he never became unruly or belligerent, but when he declined to open the trunk of his car the second time, he was grabbed by three or four policemen and handcuffed, after which the keys were taken from his pocket. Tillman now contends that he was improperly stopped and that, in any event, the officers had no right to seize and to search his person for anything other than weapons.

We simply do not agree with Tillman's contention that the officers did not have reasonable cause to believe that his moving, or readily movable, vehicle contained things subject to seizure. He says that the evidence fails to show that Officer Wood shared the information that Officer Coffman had and that he was stopped only on the basis of Wood's information that a gold colored Cadillac driven by a black male had been seen at the scene of a burglary. The test for probable cause for the stopping and the searching of this automobile rests upon the collective information of the police officers, however, not upon the information of the officers stopping the vehicle. *Perez v. State*, 260 Ark. 438, 541 S.W. 2d 915. See also, *Jones* v. *State*, 246 Ark. 1057, 441 S.W. 2d 458. Viewed in the light of the collective information of the police, not only was there reasonable cause for the search, pursuant to Rule 14.1, but

the search was not unreasonable under Fourth Amendment standards, when we view the evidence in the light most favorable to the state, as we must. See *Horton* v. *State*, 262 Ark. 211, 555 S.W. 2d 226.

The right of police officers to stop a vehicle on the public highway for the purpose of searching it exists when there is probable cause for that action, i.e., when the facts within the knowledge of the officers, or of which they have had reasonably trustworthy information, when they intercept the vehicle, amounts to more than a mere suspicion that it contains something subject to seizure. *Brinegar* v. *United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949); *Cox* v. *State*, 254 Ark. 1, 491 S.W. 2d 802; *Tygart* v. *State*, 248 Ark. 125, 451 S.W. 2d 225, cert. den. 400 U.S. 807, 91 S. Ct. 50, 27 L.Ed. 2d 36 (1970). See also, *Chambers* v. *Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); *Husty* v. *United States*, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); *Perez* v. *State*, supra; *Anderson* v. *State*, 256 Ark. 912, 511 S.W. 2d 151.

The officers clearly had the right to stop the vehicle. No search was attempted until Coffman arrived. When he did, he recognized Tillman. The parties agree that there was no arrest until after the search and the earlier existence of probable cause for arrest is not material.

The right to search and the validity of the seizure were not dependent upon the right to arrest; they were dependent only upon the reasonable cause the officers had for believing that the contents of the automobile were subject to seizure. *Carroll* v. *United States*, 267 U.S. 132, 46 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers* v. *Maroney*, supra; *Cox* v. *State*, supra; *Moore* v. *State*, 244 Ark. 1197, 429 S.W. 2d 122. Since the search was not incident to an arrest and not based upon a warrant, the reasonableness of the search turns upon its propriety as the search of an automobile.

The so-called "automobile exception" to the requirement of a warrant authorizing a search was first stated in *Carroll* v. *United States*, supra. It was based upon the premise that the Fourth Amendment to the United States Constitution does

not denounce all searches and seizures, but only those which are unreasonable. See *Milburn* v. *State*, 260 Ark. 553, 542 S.W. 2d 490; *Freeman* v. *State*, 258 Ark. 617, 527 S.W. 2d 909, 85 ALR 3d 1185. In *Carroll*, it was announced that the true rule is that a warrantless search and seizure are valid if made upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which is subject to seizure and destruction. It was recognized that there had long been a necessary difference between search of a store, dwelling house or other structure and a movable vehicle for contraband goods where it is not practicable to secure a warrant, because the vehicle can quickly be moved out of the locality or jurisdiction in which a warrant can be issued. See also, *Chambers* v. *Maroney*, supra. It is now well established that warrantless searches of automobiles may be reasonable when, under the same circumstances, a search of a home, store or other fixed piece of property would not be. *Perez* v. *State*, supra. The difference is based not only upon the mobility of the automobile, but upon the diminished expectation of privacy in an automobile. *United States* v. *Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed. 2d 538 (1977); *Arkansas* v. *Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed. 2d 235 (1979).

An automobile on the public highway may be searched without a warrant if there are both exigent circumstances and probable cause to believe that it will yield contraband or evidence useful for the prosecution of crime. *Chambers* v. *Maroney*, supra; *Freeman* v. *State*, 258 Ark. 617, 527 S.W. 2d 909, 85 ALR 3d 1185. See also, *Cox* v. *State*, supra; *Anderson* v. *State*, supra; *Roach* v. *State*, 255 Ark. 773, 503 S.W. 2d 467; *Tygart* v. *State*, supra. For the purposes of the "automobile exception," a public street and a public highway are viewed in the same light. See *Arkansas* v. *Sanders*, supra.

The knowledge of Coffman of Tillman's previous activities as an apartment burglar, of the description of Tillman's automobile and of the previous arrest and convictions of Tillman for burglary were important factors in the establishment of probable cause. See *Brinegar* v. *United States*, supra; *Husty* v. *United States*, supra. This knowledge, when coupled with the information the officers had about the

presence of an automobile fitting the description of the one stopped and of a black man at the scene of the burglary, gave probable cause for search of the automobile, and, when the interior of the automobile was empty, a search of the trunk. See *Chambers* v. *Maroney*, supra; *Tygart* v. *State*, supra. Probable cause alone will not justify the warrantless search of an automobile; exigent circumstances must also exist. *Freeman* v. *State*, 258 Ark. 617, 527 S.W. 2d 909.

The first information the officers had about the burglary was received through the call by Clarey. Police officers then came to the burglarized apartment. Thereafter, Coffman was notified. His first notice was received at 8:15 p.m. The fact that a television set had been taken was disclosed to him 10 to 15 minutes later. The knowledge of Coffman was necessary to the establishment of probable cause. There was a real danger that, unless immediate action was taken, the automobile would be outside the jurisdiction of the officers or the television removed from it. Tillman testified that he was about to stop at the house of a friend on Meadow Street when the police stopped him. If the officers had not stopped the automobile when they did, the chance of finding the television set would have been slight, if not non-existent. Where there is probable cause for the search of an automobile for particular articles and it is not practicable to secure a warrant because the opportunity to search is fleeting, if an effective search is to be made at any time, the vehicle must be searched immediately without a warrant or seized and held without a warrant for whatever period is necessary to obtain a search warrant. *Chambers* v. *Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). An immediate search of an automobile stopped on a public highway is constitutionally permissible when the occupant has been alerted and the car's contents may never be found again if a warrant must be obtained and, given probable cause to search, there is no difference between, on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and, on the other hand, carrying out an immediate search without a warrant. *Chambers* v. *Maroney*, supra; *Cox* v. *State*, 254 Ark. 1, 491 S.W. 2d 802. In this case, where Tillman had not been arrested and had possession of the keys to the automobile, and the officers obviously were not confident before the search that they had probable cause for the

arrest of Tillman, the right of the officers to seize and hold the automobile and thereby deny its use to anyone was questionable. In any event, the difficulties in seizing and securing automobiles have led the United States Supreme Court to make special allowances for search after police have seized an automobile and have it securely within their control. *Arkansas* v. *Sanders*, supra. We have under somewhat similar circumstances, said that the question was whether it was reasonably practical to obtain a search warrant. The search here was valid if it was not reasonably practical to obtain a search warrant. *Perez* v. *State*, 260 Ark. 438, 541 S.W. 2d 915; *Tygart* v. *State*, 248 Ark. 125, 451 S.W. 2d 225, cert. den. 400 U.S. 807, 91 S. Ct. 50, 27 L.Ed. 2d 36 (1970).

When the circumstances furnishing probable cause to search a particular automobile are unforeseeable, so that, if an effective search is to be made, it must be made immediately and without a warrant or the car must be seized and held without a warrant for whatever period is necessary to obtain a search warrant, either course is reasonable. *Chambers* v. *Maroney*, supra; *Perez* v. *State*, supra. The only practical action for the officers to have taken was to search the vehicle at the place it was stopped. It was highly impractical to obtain a search warrant under these circumstances. The difficulties in obtaining a warrant were greater than usual at the time of day the search took place because all the events took place on Thanksgiving day, a universally observed holiday.

Assuming that the seizure of the car keys from the person of Tillman was an unreasonable intrusion, the search of the trunk and the seizure of the television set were not fruit of that intrusion because the officers had the right to search the trunk without the warrant and without the keys and the successful search was not dependent upon their seizure, since they could have, as they said, and undoubtedly would have, broken into the trunk for that purpose. See *Somer* v. *United States*, 138 F. 2d 790 (2 Cir., 1943); *People* v. *Fitzpatrick*, 32 N.Y. 2d 499, 346 N.Y.S. 2d 793, 300 N.E. 2d 139 (1973).

This case is not related in any way to *Scisney* v. *State*, 270 Ark. 610, 605 S.W. 2d 451 (1980), or *Burkett* v. *State*, 271 Ark. 150, 607 S.W. 2d 319 (1940). In *Scisney*,

the only issue was whether there was a violation of the Fourth Amendment to the United States Constitution by a warrantless search of a suitcase found in the trunk of the accused's automobile *after* he had been taken into custody with the intention of placing him under arrest for driving while under the influence of intoxicating liquors or drugs. That search was held unreasonable upon the basis of an owner's expectation of privacy in his *luggage*, following *Sanders* v. *State*, 262 Ark. 595, 559 S.W. 2d 704, aff'd. sub nom *Arkansas* v. *Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed. 2d 235 (1979); *United States* v. *Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed. 2d 538 (1977); *Torres* v. *Puerto Rico*, 442 U.S. 465, 99 S. Ct. 2425, 61 L.Ed. 2d 1 (1979). We also found that there was no probable cause for believing that contraband was in the trunk. We found there were no exigent circumstances, because the vehicle was in the complete control of the officers, who had it towed to the police station by a wrecker, which would have afforded them ample opportunity to obtain a search warrant to search the trunk and suitcases after it was impounded. In *Burkett*, not only was the search of a locked automobile trunk made *after* an arrest of both occupants of the vehicle, and a call for a tow truck for the purpose of impounding the vehicle, but it was without probable cause.

Appellant also contends that the state failed to show that the television set had a value of more than $100. Wendel Fleming, its owner, testified that it was a 19-inch Sears color set he had purchased a year and a half prior to its theft, that the purchase price was $476, that he had never had any operational problems with it and that it was in good condition when stolen. The purchase price paid by the owner is admissible as a factor for the jury to consider in determining market value, when it is not too remote in time and bears a reasonable relation to present value. *Williams* v. *State*, 252 Ark. 1289, 482 S.W. 2d 810. This was the only evidence of value. Appellant contends that, because the set had been used for a year and a half, evidence of the purchase price was not substantial evidence of a market value of $100, relying upon *Cannon* v. *State*, 265 Ark. 270, 578 S.W. 2d 20. In that case a 1955 model automobile had been stolen. It had been purchased 12 years before the theft for $148. Naturally we held this did not show a value of $100 at the time of the theft.

The situation here is entirely different. Unlike the situation in *Cannon*, where the automobile was 23 years old and the purchase so remote in time, here the evidence of value was not so remote and was substantial.

The judgment is affirmed.

PURTLE, J., dissents.