Ralph Gene MOUNTS *v.* STATE of Arkansas

CA CR 93-993 888 S.W.2d 321

Court of Appeals of Arkansas
En Banc
Opinion delivered December 7, 1994
[Rehearing denied February 1, 1995.*]

*Cooper and Mayfield, JJ., would grant rehearing.

*Paul A. Schmidt*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sherry L. Daves*, Asst. Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. Appellant Ralph Gene Mounts entered a conditional guilty plea to a charge of possession of a controlled substance with intent to deliver pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure. He was sentenced to twenty years in the Arkansas Department of Correction, a $120,000.00 fine and court costs. He argues on appeal that the officers lacked probable cause to arrest him for driving under a suspended or revoked driver's license and consequently were precluded from inventorying his impounded vehicle in which 60 kilograms (130 pounds) of cocaine were discovered. Mounts appeals the denial of his motion to suppress the admission of the cocaine into evidence. Our review requires us to conclude that his motion to suppress should have been granted; therefore, we must reverse to permit appellant to withdraw his guilty plea as provided for in Rule 24.3(b).

Officer Ron Ball of the Arkansas State Police testified that on August 7, 1991, he stopped appellant because his vehicle's Georgia license plate did not have a monthly expiration sticker. After determining the vehicle was rented, Officer Ball issued appellant a warning ticket. Appellant produced what appeared to Officer Ball to be a valid Texas driver's license. Officer Ball then received appellant's permission to search the vehicle. During the search, Officer Ball asked appellant what was contained in a heavy suitcase, and appellant said it contained some books. Subsequently, appellant withdrew his consent to the search, and the search was terminated. Officer Ball said that he had reservations about the

information given to him, so he followed appellant while a background check was done on appellant's driver's license, vehicle registration, and criminal history. He testified that he subsequently contacted Officer Karl Byrd of the Arkansas State Police requesting additional information about appellant, and that the police radio operator advised him that appellant's Illinois driver's license was currently revoked. Officer Byrd then stopped appellant for driving with a revoked Illinois license. Officer Byrd said that appellant produced an apparently valid Texas driver's license and then he asked his communications center to verify that Texas law was the same as Arkansas law, and upon confirming that it was, he arrested appellant for driving under a revoked license. Officer Byrd testified that he believed that Texas law precluded issuance of a Texas driver's license if the applicant's driver's license in another state had been revoked or suspended and that he believed Texas erroneously issued a license to appellant because appellant had a revoked Illinois license. Officer John Scarberough of the Arkansas State Police was also at the stop. He testified that the only basis the officers had for believing that the Texas license was invalid was that appellant had a revoked Illinois license. However, Officer Byrd stated that the officers did not inquire of the Texas officials whether appellant's Texas license was valid or whether it had been cancelled, revoked or suspended.

After appellant was arrested for driving under a revoked license, his vehicle was impounded and an inventory conducted pursuant to Arkansas State Police policy and for purposes of safekeeping of the vehicle and its contents in accordance with Ark. R. Crim. P. 12.6(b). During the inventory, approximately sixty kilograms of cocaine were discovered in a suitcase in the trunk of the vehicle.

██ Appellant first argues that the officers did not have probable cause to arrest him for driving under a revoked license. A law enforcement officer may make a warrantless arrest of a person whom he has reasonable or probable cause to believe has violated the law in the officer's presence. Ark. R. Crim. P. 4.1(a)(iii). Although the officer at the time of the arrest is not required to have enough proof to sustain a conviction in order to have probable cause to make a warrantless arrest, the officer must possess reasonable, trustworthy information sufficient to warrant a prudent person to believe that the suspect had committed or

was committing an offense. *Vega* v. *State*, 26 Ark. App. 172, 762 S.W.2d 1 (1988). An officer's mere suspicion or even a "strong reason to suspect" that an offense was committed is not enough to establish probable cause. *Roderick* v. *State*, 228 Ark. 360, 705 S.W.2d 433 (1986); *Vega* v. *State, supra. See Wong Sun* v. *U.S.*, 371 U.S. 471 (1963); *Henry* v. *U.S.*, 361 U.S. 98 (1959). Probable cause is determined by the officer's knowledge at the time of the arrest. *Roderick* v. *State, supra.* Further, the U.S. Supreme Court has held that the requirement of probable cause to make a warrantless arrest is to be strictly enforced. *Henry* v. *U.S., supra.*

■■ Appellant was arrested for driving under a revoked driver's license in violation of Ark. Code Ann. § 27-16-303(a)(1) (Repl. 1994), which states:

> Any person whose driver's license or driving privilege as a nonresident has been *cancelled, suspended, or revoked as provided in this act* and who drives any motor vehicle upon the highway of this state while such license or privilege is cancelled, suspended, or revoked is guilty of a misdemeanor. [Emphasis added.]

Arkansas Code Annotated § 27-16-206(a) and (b) (Repl. 1994) provides in part:

> (a) "Suspend" means to temporarily withdraw, *by formal action*, a driver's license or privilege to operate a motor vehicle. . . .

> (b) "Revoke" means to terminate, *by formal action*, a driver's license or privilege to operate a motor vehicle. . . .[Emphasis added.]

Thus, under Arkansas law, a driver's license is not automatically revoked or suspended by operation of law when grounds therefore arise, but only after formal action is taken to revoke or suspend the license. The same is true under Texas law. *See* Vernon's Ann. Civ. St. of Tex., art. 6687b, sec. 22(a) (1994). Even though appellant produced what appeared to be a valid Texas license, the officers arrested him without inquiring as to whether Texas had revoked or cancelled the license. The arrest was made because *the officers surmised* the Texas license was erroneously issued and without any inquiry as to the status of appellant's license as determined by Texas officials.

6

Texas law precludes issuance of a Texas driver's license to an applicant whose license in another state has been suspended, revoked or cancelled, during the period of the suspension, revocation or cancellation. Vernon's Ann. Civ. St. of Tex., art. 6687b, sec. 4 (1994). Texas law also permits cancellation of the license if there is a subsequent determination that the applicant was not entitled to a license. Vernon's Ann. Civ. St. of Tex., art. 6687b, sec. 25A (1994). Simply put, appellant produced a Texas driver's license, and the officers had no knowledge that it had been cancelled, suspended or revoked by Texas. The officers merely verified Texas law on issuing a license to a person whose license in another state had been suspended or revoked, without inquiring into the status of appellant's driver's license *as determined by Texas officials*. There is no evidence in the record to indicate that appellant's Texas driver's license was invalid. We are compelled to conclude that appellant's arrest was without probable cause and, therefore, illegal.

■■ A vehicle may be impounded and inventoried only as the consequence of a legal arrest. Ark. R. Crim. P. 12.6(b). Since we must conclude that the arrest was without probable cause and, therefore, illegal, an inventory of the vehicle was also improper. *Vega* v. *State, supra.* Evidence seized as a consequence of an illegal arrest must be excluded at trial. *Wong Sun* v. *U.S., supra.*

■ The dissent argues that the officers had probable cause to conduct a warrantless search of appellant's vehicle. Arkansas Rule of Criminal Procedure 14.1(a) provides that an officer is permitted to conduct a warrantless search of a moving vehicle located on a public way if the officer has reasonable cause to believe that the vehicle contains things subject to seizure. At the time of the second stop, the officers had no knowledge of illegal drugs in appellant's vehicle. The only knowledge the officers had was (1) that appellant withdrew his consent and terminated the search at the first stop (where he was stopped for failure to display a monthly expiration sticker on the license plate) and (2) that appellant had a heavy suitcase in the trunk of his vehicle. In addition, Officer Ball testified that he heard on the police radio that appellant had a prior narcotics violation, but he determined that that was incorrect after the second stop was made. Officer Byrd, who initiated the second stop, testified that "no drug related offense" was reported when the criminal history was

checked. He also stated that, "I did not have any suspicion that [appellant] might have something to hide." Reasonable cause to conduct a warrantless search of a vehicle requires more than mere suspicion, as the officers must possess reasonably trustworthy information sufficient to cause a person of reasonable caution to believe that the vehicle contains evidence subject to seizure. *Willett* v. *State*, 298 Ark. 588, 769 S.W.2d 744 (1989); *See* Ark. R. of Crim. P. 14.1(a). Based on the officers' testimony and the legal standard cited above, we cannot conclude that probable cause existed to conduct a warrantless search of appellant's vehicle. Any warrantless search of a vehicle is presumptively unconstitutional. *U.S.* v. *Ross*, 456 U.S. 798 (1982). The State has failed to sustain its burden to provide a legal justification for the search. *Leopold* v. *State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985).

 Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment right to be free from unreasonable searches and seizures, cannot be used against the accused. *U.S.* v. *Calandra*, 414 U.S. 338, 347 (1974); *Mapp* v. *Ohio*, 367 U.S. 643 (1961). Therefore, without a valid arrest and without probable cause to make a warrantless search of appellant's vehicle, we must conclude that the cocaine was illegally seized and should be excluded from evidence. *Mapp* v. *Ohio, supra; Henry* v. *U.S., supra.*

 In reviewing the denial of a motion to suppress evidence, the appellate court makes an independent determination based on the totality of the circumstances and reverses the decision only if the trial court's decision is clearly erroneous or clearly against the preponderance of the evidence. *Houston* v. *State*, 41 Ark. App. 67, 848 S.W.2d 430 (1993). Our review of the evidence compels us to conclude the trial court's denial of appellant's motion to suppress was clearly erroneous. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Moreover, Arkansas criminal procedural rules and case law dictate the procedure that permits law enforcement officers to make warrantless arrests and searches.

Because we conclude that appellant's motion to suppress should be granted on the basis of an illegal arrest and an unjustified warrantless search, we decline to address appellant's arguments that his arrest was a pretext to search for contraband and

that an inventory subsequent to his arrest would not include the trunk of his vehicle.

Reversed and remanded.

COOPER and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the result reached by the majority opinion in this case. The case comes to us from a conditional plea of guilty to the possession of approximately 60 kilograms (130 pounds) of cocaine with intent to deliver, which the appellant admits was found in "closed luggage" in the trunk of a vehicle he was driving. He was sentenced to twenty years for the Class Y felony, to run concurrent with time to be served in a federal penitentiary, plus a fine of $120,000 and court costs. The plea agreement, which required the fine to be paid on the day of the plea, was made pursuant to Ark. R. Crim. P. 24.3 which allows a defendant to appeal an adverse determination of a pretrial motion to suppress evidence. Therefore, the judgment of conviction should be affirmed if we affirm the trial court's denial of appellant's motion to suppress as evidence the cocaine and its discovery.

Corporal Ron Ball, of the Arkansas State Police, testified that on August 7, 1991, he was on patrol and observed the appellant driving a vehicle with a Georgia license plate that had no expiration-month decal on it. By radio, he requested a registration check of the license number and was informed that there was no information on that number on file. Corporal Ball then stopped the vehicle to examine the current registration and determine the registered owner. It turned out to be a rental car, and the appellant had what appeared to be a valid Texas driver's license. Ball issued a warning ticket to appellant for lack of the expiration-month decal on the tag. He testified that he asked if he could search the vehicle and appellant gave him permission. However, the appellant terminated the search after the officer asked what was in one "very heavy" suitcase, and the appellant said it contained books. Corporal Ball returned to his patrol car, and the appellant was allowed to leave. By radio, the officer then requested information on the driver's license, criminal history, and vehicle registration, and until he received that information, he kept appellant's vehicle in view.

During that time, Trooper Karl Byrd, who in another car

was sharing the information received by radio, heard the radio operator report that appellant's Illinois driver's license had been revoked. Since Trooper Byrd knew that it was against Arkansas law to drive on a suspended license, he stopped the appellant. Corporal Ball arrived shortly thereafter, and he told the other officers who had assembled at the stop that he had received radio information that the appellant had been charged with a narcotics violation in the past.

Trooper Byrd testified that when he stopped appellant, the appellant admitted he had a suspended license in Illinois but said he had applied for a driver's license in Texas, and it had been issued to him. Byrd testified that he then requested the radio dispatcher to inquire whether Texas law was the same as Arkansas law — that when a license is revoked in one state you cannot obtain one in another state — and after he was informed that the law was the same, he arrested the appellant for driving on a revoked driver's license. Byrd and Corporal Scarberough then conducted an inventory search of appellant's vehicle in keeping with Arkansas State Police policy, and in suitcases in the trunk of the car they found the cocaine.

On cross-examination Trooper Byrd admitted that he did not ask the dispatcher to check with Texas authorities to determine if appellant's driver's license, which was valid on its face, was in fact valid. He inquired only about Texas law. He also admitted that appellant had told him that when he applied for the Texas driver's license he had informed them of the revoked Illinois license.

On redirect examination Trooper Byrd testified that he, Corporal Scarberough, Corporal Ball, and another officer were the only state officers involved in the stop. However, federal secret-service agents also came to the scene because the criminal history returned over the radio also mentioned that appellant had been charged with a credit card offense.

Richard Eads, a state police radio operator stationed in Little Rock, testified that Corporal Ball asked him to run an inquiry on the appellant. He checked Texas and Illinois and was informed that appellant had a revoked Illinois driver's license. Trooper Byrd then asked him to check on Texas law to see if it was the same as Arkansas law regarding a revoked driver's license. The

communication from Texas was that their law was the same and that there had been some kind of charge against appellant involving credit cards.

I would first note that we know, from the evidence summarized above, that when Corporal Ball made the initial stop of appellant, he was authorized to do this under Ark. R. Crim. P. 4.1(a)(iii) which allows an officer to arrest without a warrant if there is reasonable cause to believe that there has been *any* violation of law committed in the officer's presence. This rule applied because Ark. Code Ann. § 27-14-1018 (Repl. 1994) provides for the issuance of a tab or decal annually, to be used in conjunction with the permanent license plate, and that the vehicle owner shall affix and display the tab or decal; and because Ark. Code Ann. § 27-14-1005 (Repl. 1994) makes it a misdemeanor to fail to affix and display the annual tab or decal. Officer Ball did not arrest appellant but gave him a warning ticket — perhaps because the officer was told that this was a rental car and the appellant was not the owner. But regardless of why he was not arrested, *Wilburn* v. *State*, 317 Ark. 73, 876 S.W.2d 555 (1994), holds that Ark. R. Crim. P. 4.1(a)(iii) authorizes a police officer to stop and arrest without a warrant when the officer has reasonable cause to believe that a misdemeanor traffic violation has been committed in the officer's presence. Moreover, the fact that Officer Ball did not actually arrest the appellant did not make the stop illegal.

In the second place, I would note that after Officers Ball and Byrd had received additional information from other law enforcement officers, Trooper Byrd stopped the appellant and arrested him for driving with a revoked driver's license.

I think the arrest was authorized by Ark. R. Crim. P. 4.1(a)(iii) and, if there was reasonable cause for the arrest, there seems to be no contention by the appellant that the discovery of the cocaine as a result of the inventory after appellant's arrest was illegal; however, the appellant contends that there was not probable cause for the arrest by Byrd. The commentary to Ark. R. Crim. P. 4.1(a)(iii) points out that the term "probable cause" is not used in the rule because "reasonable cause" is deemed more appropriate and is more generally used. However, *Edwards* v. *State*, 300 Ark. 4, 775 S.W.2d 900 (1989), indicates that there is no "substantive distinction" between the terms.

Reasonable, or probable, cause for a warrantless arrest exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *Hudson* v. *State*, 316 Ark. 360, 872 S.W.2d 68 (1994); *Crail* v. *State*, 309 Ark. 120, 827 S.W.2d 157 (1992). Reasonable, or probable, cause to arrest without a warrant does not require the degree of proof that would be sufficient to sustain a conviction. *Hudson* v. *State, supra; Burks* v. *State*, 293 Ark. 374, 738 S.W.2d 399 (1987). On appeal from a trial court's ruling on a motion to suppress evidence, the appellate court makes an independent determination based on the totality of the circumstances and reverses only if the trial court's ruling was clearly against the preponderance of the evidence. *Hudson* v. *State, supra; Edwards* v. *State, supra.* All presumptions are favorable to the trial court's ruling on the legality of the arrest and the burden is on the appellant to demonstrate error. *Hudson* v. *State, supra.* And reasonable, or probable, cause to arrest without a warrant may be evaluated on the basis of the collective information of the police. *Starr* v. *State*, 297 Ark. 26, 33, 759 S.W.2d 535, 538 (1988).

I would affirm this case based upon the evidence and applicable law. The initial stop was made by an officer for an apparent violation, committed in the officer's presence, involving the vehicle's license plate. Although the officer only issued a warning ticket, the appellant was subsequently stopped again, and arrested this time, for driving on a revoked license. At the time the appellant was arrested, the officers collectively had information that appellant's Illinois driver's license had been revoked, that he had a criminal background that involved narcotics, that he had been charged with a credit card offense, that he was driving a rental car with no expiration-month decal on the license plate, and that he had terminated his consent to search the car after Corporal Ball had asked about the contents of a suspiciously heavy suitcase found in the trunk. At that time, in my view, there was ample reasonable cause to arrest appellant. In addition, the trial judge could find from the evidence before him that the inventory search, conducted pursuant to impounding appellant's car, was in accordance with Arkansas State Police procedure. *See Stout* v. *State*, 304 Ark. 610, 804 S.W.2d 686 (1991).

Although I would affirm this case on the grounds that the

trial court could find that the officers had reasonable cause to arrest the appellant, there is another basis for affirming the trial court.

It is well established that we affirm the trial court if it was right for any reason. *West* v. *G.D. Searle & Co.* 317 Ark. 525, 527, 879 S.W.2d 412, 413 (1994); *Warren* v. *State*, 314 Ark. 192, 198, 862 S.W.2d 222, 225 (1993); *Chisum* v. *State*, 273 Ark. 1, 6, 616 S.W.2d 728, 731, (1981); *Gonce* v. *State*, 11 Ark. App. 278, 281, 669 S.W.2d 490, 491, (1984). Here, the trial court's order, which did not state any reason for denying the appellant's motion to suppress, could be also affirmed under Ark. R. Crim. P. 14.1(a)(i), which provides:

> (a) An officer who has reasonable cause to believe that a moving or readily movable vehicle is or contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and may seize things subject to seizure discovered in the course of the search where the vehicle is:

> (i) on a public way or waters or other area open to the public;

The *unofficial* supplementary commentary to this rule cites *Tillman* v. *State*, 271 Ark. 552, 609 S.W.2d 340 (1980), and states at page 118 that it

> appears to demonstrate that the showing of reasonable cause required by the Arkansas Supreme Court varies inversely with the mobility of the place to be searched. Since mobility is the *sine qua non* of an automobile, the Court can be expected to find diminished expectations of privacy and exigent circumstances in warrantless automobile search cases.

In *Tillman, supra,* the opinion states, "The test for probable cause for the stopping and searching of this automobile rests upon the collective information of the police officers. . . ." 271 Ark. at 556, 609 S.W.2d at 343. It also says, "The right to search and the validity of the seizure were not dependent upon the right to arrest . . . ." And that "the reasonableness of the search turns upon its propriety as the search of an automobile." *Id.* at 557 and 343-44.

In *Hudson* v. *State*, 316 Ark. 360, 872 S.W.2d 68 (1994), the appellant filed two motions to suppress evidence. The first one

was based upon lack of probable cause to arrest, and the second one was based on the lack of probable cause for a warrantless search following the stop. The court said, "The same standards govern reasonable (that is to say, probable) cause determinations, whether the question is the validity of an arrest or the validity of a search and seizure." The arrest and search were based on the same information, which was supplied to a Drug Task Force by an informant who said the appellant had cocaine in his possession and had just been seen traveling in a 1977 Buick Electra, with a certain tag number, in the Arkadelphia area. Officers stopped the vehicle within an hour, but no cocaine was found in the car or on the appellant's person. Our supreme court affirmed the trial court's denial of the motions to suppress based upon language from *Hines* v. *State*, 289 Ark. 50, 709 S.W.2d 65 (1986). As to the lack of cocaine in the car or on the person of the appellant, the court said "it was conceivable" that he could have disposed of it "in some fashion."

In the case now before us, the appellant was stopped the first time in a proper manner for a lawful purpose. He gave consent for the officer to search his car but terminated the consent when the officer asked what was in a "very heavy" suitcase. Under some circumstances, the Arkansas Supreme Court has considered the consent to search as suspicious. *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988). And we have held that the attempt to avoid a police roadblock could be evidence of trying to hide unlawful activity. *Coffman* v. *State*, 26 Ark. App. 45, 759 S.W.2d 573 (1988). While I do not think the appellant's exercise of his right to terminate the search should be sufficient to constitute probable cause to continue the search, I think this, together with the matters observed by Officers Ball and Byrd and the information received from their radio operator, is sufficient when considered in light of the law I have discussed to constitute reasonable cause to detain and search the appellant's vehicle under Ark. R. Crim. P. 14.1(a)(i) — even if there was not reasonable cause to arrest appellant for driving on a revoked driver's license. I believe, as stated in *United States* v. *Cortez*, 449 U.S. 411, 418 (1981), that the evidence in this area of the law should "be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

I dissent from the reversal of the judgment of conviction.

COOPER, J., joins in this dissent.