
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-13-774

| | |
|---|---|
| REGGIE TERRELL BLAIR | Opinion Delivered November 5, 2014 |
| APPELLANT | |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-12-2141] |
| STATE OF ARKANSAS | HONORABLE BARRY SIMS, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## KENNETH S. HIXSON, Judge

After a hearing on a motion to suppress and a jury trial in Pulaski County Circuit Court, appellant Reggie Terrell Blair was convicted of possession of a firearm by certain persons (a/k/a being a felon in possession of a firearm). Blair, a habitual offender, was sentenced to prison for twelve years. On appeal, appellant argues that the trial court clearly erred (1) in denying his pretrial motion to suppress because he was impermissibly stopped, detained, and searched, as was his vehicle; and (2) by not requiring the prosecutor to offer a race-neutral explanation for using peremptory strikes against two potential jurors both African American, as required by *Batson v. Kentucky*, 476 U.S. 79 (1986). We affirm.

Appellant's criminal charge was the result of a traffic stop at approximately 10:00 p.m. on June 1, 2012, in Maumelle, Arkansas, near Counts Massie Road and Maumelle Boulevard. Testimony at the suppression hearing included the North Little Rock police officer (Sergeant

Behnke) who initiated the traffic stop, as well as the two back-up officers (Officers Rappold and Nannen) involved in the stop, seizure, and searches. Only Officer Rappold conducted a search of appellant's person and his vehicle. Marijuana was found in appellant's pants pocket, and subsequent to his arrest, a loaded gun was found in the car console. Appellant's written motion to suppress all evidence challenged the legality of the police stopping his car, searching of his person, and searching the vehicle he was driving. After conducting a pretrial hearing on the motion to suppress, the trial court summarily denied appellant's motion without explanation. The following is a summation of evidence taken at the suppression hearing.

Sergeant Behnke testified that he was working traffic enforcement that night when he observed a vehicle (a Dodge Charger driven by appellant) traveling from a residential area toward Maumelle Boulevard. Sergeant Behnke estimated appellant's vehicle to be traveling at approximately 50 miles per hour although it was in a 30-miles-per-hour speed zone when it passed his patrol unit. He admittedly did not have a radar to determine the car's precise speed. He estimated the car speed based on his more than twenty years of experience as a police officer, his experience as a certified radar operator and instructor, and his mandatory ability to estimate vehicle speeds "within a small window." He initiated a traffic stop after following the vehicle for approximately a minute. Upon approach, Sgt. Behnke heard the sole person in the car (appellant) say, "What do you want with me, mother f★★★er?" He told appellant that he had been stopped for driving too fast, and he asked appellant for his driver's license, registration, and proof of insurance. Appellant produced his driver's license, and Sgt.

Behnke went back to his patrol unit. At that time, another patrol car arrived as "back up." Behnke admitted that he did not ultimately issue appellant a ticket for speeding. Instead, he prepared a uniform citation on which he handwrote, "Physical Arrest" at the top, and "(Vehicle Towed)" as well as "Too Fast for Conditions 27-51-201" near the bottom. Sergeant Behnke said that he did not have any involvement in the subsequent searches.

Officers Rappold and Nannen were in the back-up patrol car. Officer Rappold testified that he stood at the rear passenger side of appellant's car to keep watch while Sgt. Behnke completed the paperwork. Officer Rappold heard appellant say something, so he walked to the front of the vehicle, where he heard appellant remark, "You going to shoot me, mother f★★★er?" Rappold then asked appellant to exit the vehicle, to which appellant said, "No" and locked the door. After Officer Rappold asked a second time, appellant unlocked the driver's side door and stepped out of the car. The officer testified that he detected a very strong odor of intoxicants. Both Officer Rappold and Officer Nannen described appellant's demeanor during this traffic stop as "aggressive." At that point, Officer Rappold patted appellant's clothing and felt what he thought was marijuana in appellant's pants pocket, which was consistent with the strong, unique odor emanating from appellant while he was both inside and outside the vehicle. The officer testified that he did not need the assistance of a drug-detecting dog to verify that the odor was marijuana. After the officer patted appellant down and had appellant in handcuffs, the officer removed the plastic bags of marijuana from appellant's pocket. Officer Rappold advised appellant that his car would be inventoried and impounded because there was no one else there to drive it. The inventory search, prior to

SLIP OPINION

towing, revealed a loaded firearm with additional ammunition in the car's console. Officer Rappold testified that appellant told him that he had a gun in his car for protection.

Officer Nannen testified that he was the other back-up police officer. After they arrived on scene, Rappold stood watch at the rear passenger side of appellant's vehicle. Officer Nannen heard appellant yell something unintelligible to Rappold, and he observed Rappold approach the appellant's passenger-side window. Rappold then walked back to talk to Officer Behnke and then he returned to appellant's vehicle and asked appellant to exit the vehicle. Officer Nannen described appellant's demeanor as "very aggressive." He observed the pat down, and he assisted in placing appellant in handcuffs to effect the arrest, but he did not assist with the vehicle inventory.

On this evidence, the trial court denied appellant's motion to suppress. The jury trial proceeded with similar evidence and testimony. At trial, however, appellant's girlfriend and younger brother defended him, offering reasons why the gun was in the car. His girlfriend testified that the car was hers; that she let appellant's brother borrow her car that day; and that appellant did not own a gun. His brother claimed ownership of the nine-millimeter weapon, stating that he put it in the car console and forgot to remove it; he did not recall it being loaded. The parties stipulated that appellant was a convicted felon. The jury found appellant guilty as charged, and this timely appeal followed.

Appellant does not contest that he was a felon or that the State proved that the firearm found in the car was constructively possessed by him. Appellant's first argument on appeal concerns the denial of his motion to suppress the evidence based on an alleged illegal

detention, leading to an illegal search and seizure of the weapon found in the car.[1] Appellant concedes that the initiation of a traffic stop was legal; his argument is focused on the continued detention, the search of his person, and the search of the car following arrest. We disagree that appellant has demonstrated clear error.

In reviewing a trial court's denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). Arkansas appellate courts defer to the superior position of the circuit court to evaluate the credibility of witnesses at a suppression hearing. *Ilo v. State*, 350 Ark. 138, 85 S.W.3d 542 (2002). We will reverse the denial of a motion to suppress only if the ruling is clearly against the preponderance of the evidence. *Id.*

Warrantless searches are presumptively unreasonable, and it is the State's burden to establish an exception to the warrant requirement. *See Mounts v. State*, 48 Ark. App. 1, 888 S.W.2d 321 (1994). A police officer may stop a motorist if he observes a moving violation, regardless of whether the driver is actually guilty of the observed offense. *Cassinelli v. State*, 2013 Ark. App. 553. A police officer may arrest any person without a warrant if the officer

---

[1]The admission into evidence of the marijuana found in appellant's pants pocket is not the issue on appeal; appellant was not charged with any drug-related offense. It is relevant, however, to his suppression argument that the course of events leading to a search of appellant's vehicle and the seizure of the gun were "fruits of the poisonous tree."

has reasonable cause to believe that the person has committed a felony or any violation of the law in the officer's presence. Ark. R. Crim. P. 4.1(a)(iii) (2012). Where an officer has a valid basis to stop the vehicle and detain the driver, if that officer has reasonable suspicion that the driver is armed and dangerous to the officer or others, the officer may search the outer clothing of the person and his immediate surroundings, seizing any weapon or other dangerous thing that is usable against the officer or others. Ark. R. Crim. P. 3.4 (2012). An officer making a valid traffic stop may, as a matter of course, order the driver to exit the vehicle. *Reeves v. State*, 80 Ark. App. 61, 65, 91 S.W.3d 97, 100 (2002), citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). This safety-frisk pat down shall not be more extensive than is reasonably necessary to ensure the safety of the officer or others. Ark. R. Crim. P. 3.4 (2012). The test is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. *Reeves*, *supra*. The officer's reasonable belief must be based on specific and articulable facts. *Id*. Appellant's argument focuses on his allegation of an unconstitutional pat-down (also called a *Terry* frisk) and of an unconstitutional seizure of the contents of his pocket, admittedly not believed to be a weapon. We disagree that the trial court clearly erred because there was objective evidence—testified to by Officer Rappold—that appellant posed a potential threat by his consistently aggressive demeanor, questioning whether the officer intended to shoot him. This aggressive behavior was corroborated by Officer Nannen and was obviously deemed credible by the trial court. We hold that appellant has failed to demonstrate that the trial court clearly erred in deeming this safety-frisk a constitutionally valid act.

SLIP OPINION

Added to the reasonable basis for a safety-frisk was Officer Rappold's testimony that he had already formed a legitimate reason to suspect that appellant was in possession of marijuana, even before appellant exited the car. The marijuana odor emanating from appellant and the vehicle, alone, provided reasonable suspicion to detain appellant to determine the lawfulness of his conduct, to search the vehicle, and to arrest him, depending on the circumstances. *See Cockrell v. State*, 2010 Ark. 258, 370 S.W.3d 197; *McDaniel v. State*, 337 Ark. 431, 990 S.W.2d 515 (1999); *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997); *Lopez v. State*, 2009 Ark. App. 750. The critical inquiry requires us to focus on what information was gleaned by the officers prior to the conclusion of the traffic stop. *See Yarbrough v. State*, *supra*.

The arrest led to the car being inventory-searched, in preparation for towing and impounding. Appellant never specifically challenged the legality of the search on the basis of an invalid search-incident-to-arrest or invalid inventory-and-impound. This aspect of his suppression argument, to the extent it appears he is making it, is not preserved for our review on appeal.

Concluding our consideration of appellant's suppression-related arguments, we defer to the credibility determinations of the circuit court. *See Montgomery v. State*, 367 Ark. 485, 241 S.W.3d 753 (2006); *Robinson v. State*, 2013 Ark. App. 464. After our de novo review, we have no hesitancy in holding that the denial of appellant's motion to suppress was not clearly against the preponderance of the evidence.

Appellant's other argument on appeal concerns jury selection. Appellant, who is an African-American male, contends that the trial court erred in permitting the prosecutor to use peremptory strikes to remove two African-American jurors (a male and a female) solely on the basis of race in violation of *Batson, supra*. Appellant's precise argument is that the trial court erred in not requiring the State to present a race-neutral reason for striking those two jurors, thus deeming appellant not to have established a prima facie case of race discrimination. We disagree that appellant has demonstrated error.

It is true that under *Batson*, a prosecutor in a criminal case may not use peremptory strikes to exclude jurors solely on the basis of race. *See Holder v. State*, 354 Ark. 364, 124 S.W.3d 439 (2003); *Wooten v. State*, 351 Ark. 241, 91 S.W.3d 63 (2002). The United States Supreme Court in *Batson* adopted a three-part test to determine whether a peremptory strike violates the Equal Protection Clause. *Holder, supra*. Those three steps require the following: (1) the opponent of a peremptory challenge must make a prima facie case of racial discrimination; (2) the proponent of the strike must come forward with a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *Id*. *See also MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998).

In order to establish the first step—a prima facie case of purposeful discriminatory intent—the opponent must present facts to raise an inference to support that purposeful discriminatory intent. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). This first step is accomplished by showing (1) that the strike's opponent is a member of an identifiable racial group; (2) that the strike is part of a jury-selection process or pattern designed to discriminate;

8

and (3) that the strike was used to exclude jurors because of their race. *Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001). The trial court must consider all relevant circumstances in deciding whether a prima facie case has been made, i.e., whether the opponent produced evidence sufficient to permit the inference that discrimination has occurred. *MacKintrush*, *supra*. Here, the trial court concluded that appellant failed to present a prima facie case of racial discrimination, ending the inquiry. The striking of two African-American jurors, alone, does not establish a pattern or process designed to discriminate. *See Smith v. State*, 294 Ark. 357, 742 S.W.2d 936 (1988). The trial court's ruling was not clearly against the preponderance of the evidence. *See Moore v. State*, 92 Ark. App. 453, 215 S.W.3d 688 (2005); *Lewis v. State*, 84 Ark. App. 327, 139 S.W.3d 810 (2004). Consequently, we affirm.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Cheryl Barnard*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.